## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| TAU CETI VENTURES LLC, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:26-cv-00716 |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| HP INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Tau Ceti Ventures LLC ("TCV" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendant HP Inc. ("HP" or "Defendant"), and alleges as follows:

## SUMMARY

1. Plaintiff is the owner by assignment of all right, title and interest in United States Patent Nos. 8,492,780; 8,552,460; 8,766,309; 9,257,604; 9,847,460; 10,038,116; 10,439,108; and 10,566,509 (collectively, the "Patents-in-Suit"; attached hereto as Exhibits A-H, respectively).

2. Defendant infringes the Patents-in-Suit by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, a number of its commercial products (e.g., laptops and monitors) including, *inter alia*, the HP Omen 32Q Monitor, HP Series 5 524SW Monitor; HP Series 5 Pro 514pn Monitor, HP E14 G4 Portable Monitor, HP Transcend Laptop, HP Omnibook 5 Flip, and other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

1

3. By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendant's infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6. Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office. Plaintiff seeks monetary damages for Defendant's infringement of the Patents-in-Suit.

## THE PARTIES

7. Plaintiff Tau Ceti Ventures LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

8. Defendant HP is a corporation organized and existing under the laws of the State of Delaware with a place of business at 1501 Page Mill Road, Palo Alto, CA 94304. HP is registered to do business in the State of Texas, and its registered agent is CT Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

9.      On information and belief, Defendant, through its online store, directly and/or indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States and/or imports the Accused Products into the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

10.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendant because (i) availed itself of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

12.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, HP has committed acts of patent infringement in this District and has a regular and established place of business in this District, including at 3800 Quick Hill Rd. #100, Austin, Texas 78728.  In fact, HP previously admitted that it has more than 150 employees working at that

3

location. *See, e.g.*, *Unification Technologies LLC, v. HP Inc.*, No. 6:20-cv-501-ADA, Dkt. No. 24 (W.D. Tex. Sept. 25, 2020)) (HP requesting transfer to the Austin Division). HP also admitted that it has at least two data centers in this District. *Id.*

## PATENTS-IN-SUIT

### U.S. Patent No. 8,492,780

13.    U.S. Patent No. 8,492,780 (the "'780 Patent") is titled "Light-emitting device and manufacturing method thereof" and was issued on July 23, 2013. A true and correct copy of the '780 Patent is attached as Exhibit A.

14.    The '780 Patent was filed on February 11, 2010 as U.S. Patent Application No. 12/703,964, and claims priority to Taiwan Patent Application No. 098104423, filed February 11, 2009.

15.    Plaintiff is the owner of all rights, title, and interest in and to the '780 Patent, with the full and exclusive right to bring suit to enforce the '780 Patent, including the right to recover for past infringement.

16.    The '780 Patent is valid and enforceable under United States Patent Laws.

17.    The '780 Patent recognized problems with existing light emitting devices at the time of the invention of the '780 Patent.

18.    For instance, with reference to FIG. 1 below, the '780 Patent recognized that, "because the surface of the transparent substrate 10 of the conventional light emitting device 100 … is substantially flat and the refractive index of the transparent substrate 10 is different from the refractive index of the external environment, the total internal reflection (TIR) occurs when a light A emitted from the active layer 122." '780 Patent at 1:55-60.



FIG.1
(Related Art)

19.     As such, the '780 Patent recognized that "the light extraction efficiency from [a traditional] light emitting device [ ] is reduced drastically." *Id.*, 1:61:-62.

20.     In view of the foregoing, the '780 Patent discloses a "light-emitting device" that comprises a "substrate" that includes a "a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer," where "the sidewall of the substrate comprises a first area and a second area," and "the morphology of the first area is substantially flat and the morphology of the second area is substantially textured." *Id.*, cl. 1.  According to the '780 Patent, "light extraction efficiency of the light emitting device may be enhanced by the discontinuous structure on the sidewall." *Id.*, 2:9-11.

### U.S. Patent No. 8,552,460

21.     U.S. Patent No. 8,552,460 (the "'2,460 Patent") is titled "Package for a light emitting element" and was issued on October 8, 2013.  A true and correct copy of the '2,460 Patent is attached as Exhibit B.

22.     The '2,460 Patent was filed on September 8, 2011 as U.S. Patent Application No. 13/227,703, which is a division of U.S. Patent Application 12/257,203, filed on October 23, 2008, which is a continuation-in-part of U.S. Patent Application No. 11/336,094, filed on January 20, 2006, from which it also claims priority.

23.     Plaintiff is the owner of all rights, title, and interest in and to the '2,460 Patent, with the full and exclusive right to bring suit to enforce the '2,460 Patent, including the right to recover for past infringement.

24.     The '2,460 Patent is valid and enforceable under United States Patent Laws.

25.     The '2,460 Patent recognized problems with existing light emitting devices at the time of the invention of the '2,460 Patent.

26.     For instance, the '2,460 Patent recognized that, "[h]igh brightness (HB) LED chips are being operated at ever-increasing power level… [and] that heat generated by the LED chips has to be removed by the package to the surroundings." '2,460 Patent at 1:29-33.  At the time, the "combination of the LED substrate, the submount, and the package material [were] poorly suited for transferring heat from the LED chip to the surroundings."  *Id*., at 1:34-36.  Accordingly, the '2,460 Patent recognized, among many other things, that a thin membrane of silicone could allow for "surface mount technology, which is facilitated by micro-via technology," as well as improve "compatibility of thermal properties (e.g., the coefficient of thermal expansion) of the LED and LED package" *Id*., at 7:67-8:9.

27.     In view of the foregoing, and to address problems such as "a decrease in thermal conductivity that limits the physical size and power of the chips that can be used in [an LED] package," the '2,460 Patent discloses a "high-brightness LED module" that includes "a substrate (also referred to as submount or platform) with a recess in which a light emitting element is mounted," where "[t]he recess is defined by sidewalls and a membrane" and "[a]t least two through-holes filled with electrically conducting material (also referred to as micro-vias or through-contacts) are disposed in the membrane to electrically connect the light emitting element to the exterior of the package." *Id*., at 1:39:42, 1:47-54.

**U.S. Patent No. 8,766,309**

28.    U.S. Patent No. 8,766,309 (the "'309 Patent") is titled "Omnidirectional reflector" and was issued on July 1, 2014.  A true and correct copy of the '309 Patent is attached as Exhibit C.

29.    The '309 Patent was filed on November 7, 2013 as U.S. Patent Application No. 14/073,915, which is a continuation application of U.S. Patent Application No. 13/857,678, filed on Apr. 5, 2013, which is a continuation application of U.S. Patent Application No. 12/202,167, filed Aug. 29, 2008, which claims priority to Provisional Patent Application No. 61/089,796, filed Aug. 18, 2008.

30.    Plaintiff is the owner of all rights, title, and interest in and to the '309 Patent, with the full and exclusive right to bring suit to enforce the '309 Patent, including the right to recover for past infringement.

31.    The '309 Patent is valid and enforceable under United States Patent Laws.

32.    The '309 Patent recognized problems with existing LEDs at the time of the invention of the '309 Patent.

33.    For instance, the '309 Patent discloses that "reflectors have been formed as part of [an] LED in order to direct the light in a desired direction and away from any light-absorbing substrates," and "[o]ne typical reflector is a distributed Bragg reflector (DBR), which uses alternating layers of materials having different refractive indices to reflect the emitted light." '309 Patent at 1:40-45.  However, the '309 Patent discloses that, "[w]hile a DBR is helpful … it is not omnidirectional, as the reflectivity of the DBR drops when the angle of incidence of the light impacting the DBR increases relative to normal to the surface of the DBR."  *Id.*, at 1:45-49. According to the '309 Patent, "[t]his drop in the efficiency of the DBR causes a corresponding

drop in efficiency of the LED." *Id.*, at 1:49-50. Thus, the '309 Patent identified that "what is needed is a reflector that has a greater efficiency for a larger range of incident angles." *Id.*, at 1:51-52.

34.    In this regard, the '309 Patent discloses that "[t]hese and other problems are generally solved or circumvented, and technical advantages are generally achieved, by preferred embodiments of the present invention which provide for an omnidirectional reflector incorporated with a light-emitting diode (LED)." *Id.*, at 1:56-60.

## U.S. Patent No. 9,257,604

35.    U.S. Patent No. 9,257,604 (the "'604 Patent") is titled "Light-emitting device having a patterned surface" and was issued on February 9, 2016. A true and correct copy of the '604 Patent is attached as Exhibit D.

36.    The '604 Patent was filed on December 18, 2013 as U.S. Patent Application No. 14/132,819, which is a continuation application of U.S. Patent Application No. 12/646,553, filed on December 23, 2009, which is a continuation-in-part of U.S. Patent Application No. 12/222,548, filed on August 12, 2008, which claims prior to Taiwan Patent Application No. 097150633, filed on December 24, 2008.

37.    Plaintiff is the owner of all rights, title, and interest in and to the '604 Patent, with the full and exclusive right to bring suit to enforce the '604 Patent, including the right to recover for past infringement.

38.    The '604 Patent is valid and enforceable under United States Patent Laws.

39.    The '604 Patent recognized problems with existing LEDs at the time of the invention of the '604 Patent.

40.    For instance, the '604 Patent recognized that "[s]urface roughening technology is

one of the efficient methods to enhance luminance." '604 Patent at 1:35-36. In particular, "[t]he ratio of the pattern width to the width between patterns of the substrate surface [ ] is generally designed to be around 1," and thus, "a considerable portion of the substrate surface [ ] is still parallel to the surface of the active layer [ ], and the light emitted from the active layer [ ]  to the parallel substrate surface is easily reflected back to the epitaxial stack because of total internal reflection (TIR) effect and absorbed by the epitaxial stack to generate heat." *Id.*, at 1:52-59. According to the '604 Patent, this "worsens both the light extraction efficiency and the heat dissipation problems." *Id.*, at 1:59-61. While the '604 Patent recognized that "the pattern is usually formed deeper in order to compensate the light loss due to the parallel (unpatterned) region," "the high aspect ratio of the deeper pattern causes difficulty for subsequently epitaxial growth and adversely affects the epitaxial quality." *Id.*, at 1:61-65.

41.    The '604 Patent further recognized "[a]nother prior technique for roughen surface" which involved utilizing a "mechanically polishing method to form a randomly distributed rough patterns on the substrate surface." *Id.*, at 1:66-2:1. However, the '604 Patent discloses that "it is hard to control the roughened dimension, such as the depth or the width," and "the epitaxial quality is not good by growing an epitaxial layer on the randomly rough surface." *Id.*, at 2:2-4.

42.    Accordingly, the '604 Patent discloses a "light-emitting device" that comprises "a substrate having a first patterned unit; and a light-emitting stack on the substrate and having an active layer with a first surface; wherein the first patterned unit, protruding in a direction from the substrate to the light-emitting stack, has side surfaces abutting with each other and substantially non-parallel to the first surface in cross-sectional view, and has a non-polygon shape in top view." *Id.*, at 2:8-15.

9

**U.S. Patent No. 9,847,460**

43.     U.S. Patent No. 9,847,460 (the "'7,460 Patent") is titled "Light emitting device with reflective electrode" and was issued on December 19, 2017.  A true and correct copy of the '7,460 Patent is attached as Exhibit E.

44.     The '7,460 Patent was filed on March 16, 2016 as U.S. Patent Application No. 15/071,978, which is a continuation application of U.S. Patent Application No. 13/474,362, filed on May 17, 2012.

45.     Plaintiff is the owner of all rights, title, and interest in and to the '7,460 Patent, with the full and exclusive right to bring suit to enforce the '7,460 Patent, including the right to recover for past infringement.

46.     The '7,460 Patent is valid and enforceable under United States Patent Laws.

47.     The '7,460 Patent recognized problems with existing light emitting devices at the time of the invention of the '7,460 Patent.

48.     For instance, the '7,460 Patent recognized that, "[c]urrently, the inner light-emitting efficiency of the light-emitting diode is about 50% to 80%, but a part of the light may be absorbed by the electrode or the light-emitting layer so the total light-emitting efficiency is degraded." '7,460 Patent at 1:21-25.  Thus, "the mirror layer under the electrode has been provided to solve the problem." *Id.*, at 1:25-26.  However, "[w]hen the electrical current is applied into the light-emitting diode and flows through the electrode, the material of the mirror layer may be migrated to the electrode," and "[t]he migration of the material of the mirror layer causes the increase of the resistance of electrode and lowers the light-emitting efficiency of the light-emitting diode." *Id.*, at 1:30-35.  Thus, the '7,460 Patent discloses that "a barrier layer 11 is provided to prevent the migration of the material of the mirror layer 12 ….." *Id.*, at 1:35-37.  Nevertheless, the '7,460

10

Patent discloses that "in recent years, as the light from a single chip is required to emit more, the electrical current applied to the light-emitting diode is increased, and the large electrical current may destroy the barrier layer 11." *Id.*, at 1:37-41.

49.    The '7,460 Patent further discloses that "[t]he conventional mirror layer 12 is formed of Al or Ag, and the conventional barrier layer 11 is formed by a single metal which can defense the migration of the mirror layer 12, such as Ti or Mo," but "it is not easy to form a barrier layer 11 which has a uniform thickness on the mirror layer 12." *Id.*, at 1:42-47.  Moreover, the '460 Patent discloses that, "if a high electrical current flows through the electrode, the barrier layer 11 formed by two different metals is usually still destroyed by the material of the mirror layer 12 …. and, thus, the conductivity of the electrode 4 substantially decreases." *Id.*, at 1:53-62.

50.    Accordingly, the '7,460 Patent discloses "[a] light-emitting device, comprises: a semiconductor light emitting stack; an electrode on the semiconductor light emitting stack, the electrode comprising a mirror layer, an adhesion layer inserted between the mirror layer and the semiconductor light emitting stack, a bonding layer; and a plurality of pits between the bonding layer and the semiconductor light emitting stack, wherein one of the plurality of pits is not filled up by the adhesion layer." *Id.*, at 1:66-2:6.

**U.S. Patent No. 10,038,116**

51.    U.S. Patent No. 10,038,116 (the "'116 Patent") is titled "Light-emitting device having a patterned substrate and the method thereof" and was issued on July 31, 2018.  A true and correct copy of the '116 Patent is attached as Exhibit F.

52.    The '116 Patent was filed on August 30, 2017 as U.S. Patent Application No. 15/691,357, which is a continuation application of U.S. Patent Application No. 14/986,791, filed on Jan. 4, 2016, which is a continuation application of U.S. Patent Application No. 13/618,544,

filed on Sep. 14, 2012, issued as U.S. Pat. No. 9,231,151, which is a continuation application of U.S. Patent Application No. 12/860,599, filed on Aug. 20, 2010, issued as U.S. Pat. No. 8,648,522, which is a continuation application of U.S. Patent Application No. 11/878,961, filed Jul. 30, 2007, issued as U.S. Pat. No. 7,825,577, which claims prior to Taiwan Patent App. No. 095127924, filed Jul. 28, 2006.

53.    Plaintiff is the owner of all rights, title, and interest in and to the '116 Patent, with the full and exclusive right to bring suit to enforce the '116 Patent, including the right to recover for past infringement.

54.    The '116 Patent is valid and enforceable under United States Patent Laws.

55.    The '116 Patent recognized problems with existing LEDs at the time of the invention of the '116 Patent.

56.    For instance, the '116 Patent recognized that "[s]urface roughening has been an effective means to enhance the light-extraction efficiency, whether on a substrate or on a top semiconductor layer." '116 Patent at 1:38-40. However, the '116 Patent discloses that, "[a]lthough the light extraction efficiency is enhanced because of the roughened surface of the substrate [ ], the surface damages such as the alteration of the surface composition and the lattice distortion are resulted from the roughening process as well." *Id.*, at 1:50-54. And, in some instances, "part of the mask materials or the reactive ions are sputtered onto and even doped into a certain depth of the substrate, therefore the quality of the epitaxy layer deposited thereafter is downgraded." *Id.*, at 1:54-58. The '116 Patent further discloses that "[t]he mechanical polishing process also damages the lattice structure of the substrate surface, such that the quality of the successively grown semiconductor layer, such GaN, is worse, and the internal quantum efficiency is lowered." *Id.*, at 1:58-62.

57. Accordingly, the ’116 Patent claims a “light-emitting device” that comprises “a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire, and “a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer,” where “one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side.” *Id.*, at Cl. 1.

**U.S. Patent No. 10,439,108**

58. U.S. Patent No. 10,439,108 (the “’108 Patent”) is titled “LED light emitting device for display device, and display device” and was issued on October 8, 2019. A true and correct copy of the ’108 Patent is attached as Exhibit G.

59. The ’108 Patent was filed on July 27, 2018 as U.S. Patent Application No. 16/047,979, which is a continuation of U.S. Patent Application No. 14/751,393, filed on Jun. 26, 2015, which claims priority to Chinese Patent Application No. 201510009581.X, filed on Jan. 8, 2015.

60. Plaintiff is the owner of all rights, title, and interest in and to the ’108 Patent, with the full and exclusive right to bring suit to enforce the ’108 Patent, including the right to recover for past infringement.

61. The ’108 Patent is valid and enforceable under United States Patent Laws.

62. The ’108 Patent recognized problems with existing light emitting devices at the time of the invention of the ’108 Patent.

63.    For instance, the '108 Patent discloses the following:

[A] quantum dot film is fabricated by including the cadmium in a quantum dot material to improve the light emission efficiency and brightness of the quantum dot material, but the heavy metal cadmium is a highly poisonous substance, so the concentration of the quantum dot material in the quantum dot film has to be lowered. However if the concentration of the quantum dot material in the quantum dot film is low, then there may be a considerable gap between adjacent quantum dot components, and taking a blue LED as an example, light in complementary colors to blue light is red light and green light, and when the blue light emitted by the blue LED passes the quantum dot film, the majority of the blue light may pass the gap between the adjacent quantum dot components, and only the minority of the blue light may excite the quantum dot material to generate red light and green light mixed with the blue light into white light, thus resulting in a low utilization ratio of the blue light. Moreover too much of the blue light is transmitted so that the proportion of the blue light in the white light generated from the mixing is high, and the proportion of the red light and the green light is low, thus making the white light generated from the mixing bluish as a whole, which may degrade the light emission effect of the LED light emitting device.

'108 Patent at 2:58-3:14.

64.    In view of the foregoing, the '108 Patent discloses "an LED light emitting device for a display device, and a display device so as to improve both the utilization ratio of light emitted by an LED lamp and the light emission effect of the LED light emitting device." *Id.*, at 3:15-29.

**U.S. Patent No. 10,566,509**

65.    U.S. Patent No. 10,566,509 (the "'509 Patent") is titled "Light emitting structure" and was issued on February 18, 2020.  A true and correct copy of the '509 Patent is attached as Exhibit I.

66.    The '509 Patent was filed on August 28, 2017 as U.S. Patent Application No. 15/688,339, which is a continuation of U.S. Patent Application No. 15/285,678, filed October 5, 2016, which is a continuation of U.S. Patent Application No. 14/536,169, filed November 7, 2014, which is a continuation of U.S. Patent Application No. 13/227,841, filed September 8, 2011, which claims priority to Taiwan Patent Application No. 099130428, filed September 8, 2010.

14

67.     Plaintiff is the owner of all rights, title, and interest in and to the '509 Patent, with the full and exclusive right to bring suit to enforce the '509 Patent, including the right to recover for past infringement.

68.     The '509 Patent is valid and enforceable under United States Patent Laws.

69.     The '509 Patent recognized problems with existing light emitting devices at the time of the invention of the '509 Patent.

70.     For instance, the '509 Patent discloses that, "In a commonly-known process of making a light-emitting structure, a chip of a light-emitting element such as a light-emitting diode (LED) is made by dicing a finished epitaxial structure formed by an epitaxial growth process," and "[t]he chip is then arranged on a submount, which is a lead frame or a big size mounting substrate, for the following wire-bonding, soldering, phosphor-coating, and encapsulation processes." '509 Patent at 1:29-36.  However, the '509 Patent discloses that "there are too many steps in these processes," and thus "the time and the cost of the manufacture are dramatically increased." *Id.*, at 1:36-38.

71.     To address this problem and/or other problems (e.g., "[t]o improve a light extraction efficiency of the light-emitting element," the '509 Patent discloses "a light-emitting structure which includes a semiconductor light-emitting element, a first connection point and a reflective element," where "[t]he semiconductor light-emitting element includes a bottom surface, a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface, "[t]he first connection point is arranged on the bottom surface, and "[t]he reflective element includes a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path."

15

*Id.*, at 1:42-54.

<div align="center">

**COUNT I: INFRINGEMENT OF U.S. PATENT No. 8,492,780**

</div>

72. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

73. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '780 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Omen 32Q Monitor, E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'780 Accused Products").

74. As one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '780 Patent in connection with one of the '780 Accused Products (e.g., the HP Omen 32Q Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '780 Accused Products that it obtains during discovery.

75. ***1(a): A light emitting device, comprising: a substrate, wherein the substrate comprises a first major surface, a second major surface, and a sidewall; and —*** Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '780 Accused Products that are covered by claim 1 of the '780 Patent.

For instance, the HP Omen 32Q Monitor is a light emitting device comprising a substrate, wherein the substrate comprises a first major surface, a second major surface and a sidewall, as

shown in Figure 1A-1 to Figure 1A-2 below:



*Figure 1A – 1*



*Figure 1A – 2*

76.    ***1(b): a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer;***— The HP Omen 32Q Monitor comprises a light emitting stack layer formed on the first major surface of the substrate comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer, as shown

in Figure 1A – 3 to Figure 1A – 4 below:



*Figure 1A - 3*



*Figure 1A – 4*

77.    *1(c): wherein the sidewall of the substrate comprises a first area and a second area;*— In the HP Omen 32Q Monitor,  the sidewall of the substrate comprises a first area and a second area, as shown in Figure 1A – 5 to Figure 1A – 6 below:



*Figure 1A – 5*



Figure 1A– 6

78.    *1(d): wherein the morphology of the first area is substantially flat and the morphology of the second area is substantially textured.*— In the HP Omen 32Q Monitor, the morphology of the first area is a substantially flat, and the morphology of the second area is substantially textured, as shown in Figure 1A– 5 to Figure 1A– 6 above.

79.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '780 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '780

Patent under 35 U.S.C. § 271(c).

80.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '780 Patent while being on notice of (or willfully blind to) the '780 Patent. For instance, Defendant has supplied and continues to supply the '780 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '780 Patent.

81.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '780 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '780 Accused Products and uses of the '780 Accused Products.

82.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '780 Patent. For instance, Defendant knows (and/or has known) of the existence of the '780 Patent or at least should have known of the existence of the '780 Patent but were willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '780 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '780 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or have intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '780 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '780 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '780 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

20

83.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '780 Patent by offering for sale, selling, and/or importing one or more components in connection with the '780 Accused Products that contribute to the direct infringement of the '780 Patent by customers of the '780 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '780 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '780 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '780 Patent. Defendant has supplied (and/or continues to supply) the '780 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '780 Patent by using the '780 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

84.    At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '780 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

85.    Additional allegations regarding Defendant's knowledge of the '780 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

86.    Defendant's infringement of the '780 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '780 Patent.

21

88.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '780 Patent, including, without limitation, a reasonable royalty.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,552,460

89.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

90.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '2,460 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'2,460 Accused Products").

91.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '2,460 Patent in connection with one of the '2,460 Accused Products (e.g., the HP Series 5 Pro 514pn). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '2,460 Accused Products that it obtains during discovery.

92.    *1(a): A high-brightness LED module comprising: a silicon substrate comprising a recess defined by sidewalls and a membrane, wherein at least two micro-vias are disposed in the membrane, the micro-vias comprising conductive material that passes through the membrane; and* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '2,460 Accused Products that are

covered by claim 1 of the '2,460 Patent.

For instance, the HP Series 5 Pro 514pn is a high brightness LED module comprising a silicon substrate comprising a recess defined by sidewalls and a membrane, wherein at least two micro-vias are disposed in the membrane, the micro-vias comprising conductive material that passes though the membrane, as shown in Figure 1B - 1 and Figure 1B – 6 below:



*Figure 1B - 1*



*Figure 1B – 2*

23



*Figure 1B - 3*



*Figure 1B – 4 (First micro-via p-contact)*



*Figure 1B – 5 (Second micro-via n-contact)*



*Figure 1B – 6 (The micro-vias comprise conductive material such as Gold, Tin, and Copper that pass though the membrane.)*

93.    ***1(b): a light emitting element mounted to the membrane, wherein a p-contact of***

***the light emitting element is coupled to a first micro-via and an n-contact of the light emitting element is coupled to a second micro-via.*** — The HP Series 5 Pro 514pn includes a light emitting element mounted to the membrane, wherein a p-contact of the light emitting element is coupled to a first micro-via and an n-contact of the light emitting element is coupled to a second micro-via, as shown in Figure 1B – 7 to Figure 1B – 10 below:



*Figure 1B - 7*



*Figure 1B - 8 (p-contact is coupled to the first micro-via)*

26



*Figure 1B - 9 (n-contact is coupled to the second micro-via)*



*Figure 1B - 10*

94.     Additionally, Defendant has been and/or currently is an active inducer of infringement of the '2,460 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '2,460 Patent under 35 U.S.C. § 271(c).

95.     Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '2,460 Patent while being on

27

notice of (or willfully blind to) the '2,460 Patent. For instance, Defendant has supplied and continues to supply the '2,460 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '2,460 Patent.

96.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '2,460 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '2,460 Accused Products and uses of the '2,460 Accused Products.

97.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '2,460 Patent. For instance, Defendant knows (and/or has known) of the existence of the '2,460 Patent or at least should have known of the existence of the '2,460 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '2,460 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '2,460 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '2,460 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '2,460 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '2,460 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

98.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '2,460 Patent by offering for sale, selling, and/or importing one or more components in connection with the '2,460 Accused Products that contribute to the direct

infringement of the '2,460 Patent by customers of the '2,460 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '2,460 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '2,460 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '2,460 Patent. Defendant has supplied (and/or continues to supply) the '2,460 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '2,460 Patent by using the '2,460 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

99.    At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '2,460 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

100.    Additional allegations regarding Defendant's knowledge of the '2,460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

101.    Defendant's infringement of the '2,460 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '2,460 Patent.

103.    Plaintiff is entitled to recover from Defendant all damages that TCV has sustained as a result of Defendant's infringement of the '2,460 Patent, including, without limitation, a reasonable royalty

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,766,309**

104.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

105.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '309 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Omen 32Q Monitor, among other substantially similar products (collectively, the "'309 Accused Products").

106.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '309 Patent in connection with one of the '309 Accused Products (e.g., the HP E14 G4 Portable Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '309 Accused Products that it obtains during discovery.

107.    *1(a): A device comprising: a substrate;* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '309 Accused Products that are covered by claim 1 of the '309 Patent.

For instance, the HP E14 G4 Portable Monitor is a device comprising a substrate, as shown in Figure 1E - 1:

30



*Figure 1C - 1*

108.    **1(b): *a light-reflective layer disposed over the substrate;*** — The HP E14 G4 Portable Monitor comprises a light-reflective layer disposed over the substrate, as shown in Figure 1C – 2 to Figure 1C – 4 below.



*Figure 1C - 2*



*Figure 1C – 3*

| Quant. Type | Element | Line | keV | Mass% | Atom% | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 37.29±0.09 | 56.84±0.14 | 17.84 | Std-less | 0.97/4.46/1.00 |
| Automatically identified | O | K | 0.525 | 25.32±0.11 | 28.98±0.12 | 23.90 | Std-less | 0.93/2.36/1.00 |
| Automatically identified | Al | K | 1.486 | 7.35±0.04 | 4.99±0.03 | 10.52 | Std-less | 0.96/1.52/1.00 |
| Automatically identified | Si | K | 1.739 | 5.23±0.04 | 3.41±0.02 | 8.14 | Std-less | 0.94/1.42/1.00 |
| Manually identified | Ti | K | 4.508 | 0.99±0.03 | 0.38±0.01 | 1.76 | Std-less | 1.12/1.04/1.00 |
| Automatically identified | Cu | K | 8.040 | 8.42±0.12 | 2.43±0.04 | 14.41 | Std-less | 1.21/1.00/1.00 |
| Automatically identified | Nb | L | 2.166 | 13.40±0.08 | 2.64±0.02 | 20.41 | Std-less | 1.27/1.07/1.00 |
| Automatically identified | Ag | L | 2.984 | 2.00±0.04 | 0.34±0.01 | 3.03 | Std-less | 1.31/1.04/1.00 |
| Total | | | | 100.00 | 100.00 | | | |
| Spc_002 | | | | | | | | Fitting ratio 0.0128 |

*Figure 1C - 4*

109. ***1(c): a photonic crystal layer disposed over the substrate, the photonic crystal layer being configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate; and*** — The HP E14 G4 Portable Monitor comprises a photonic crystal layer disposed over the substrate, where the photonic crystal layer is configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate. *See, e.g.,* Figure 1C – 5 to Figure 1C – 7 below:

32



*Figure 1C - 5*



*Figure 1C – 6*



*Figure 1C - 7*

***1 (d): a light-emitting diode (LED) disposed over the substrate, wherein the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and wherein the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED.*** — The HP E14 G4 Portable Monitor comprises an LED disposed over the substrate, where the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and where the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED. *See, e.g.,* Figure 1C – 8 to Figure 1C – 10 below:



*Figure 1C – 8*



*Figure 1C - 9*



*Figure 1C -10*

110. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '309 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '309 Patent under 35 U.S.C. § 271(c).

111. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '309 Patent while being on notice of (or willfully blind to) the '309 Patent. For instance, Defendant has supplied and continues to supply the '309 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '309 Patent.

112. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '309 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '309 Accused Products and uses of the '309 Accused Products.

113. Defendant knows (and/or has known) that such encouraging and aiding does (and/or

36

would) result in its customers directly infringing the '309 Patent. For instance, Defendant knows (and/or has known) of the existence of the '309 Patent or at least should have known of the existence of the '309 Patent but were willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '309 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '309 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '309 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '309 Patent and/or subjectively believe (and/or has believed) that its actions will (and/or would) result in infringement of the '309 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

114. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '309 Patent by offering for sale, selling, and/or importing one or more components in connection with the '309 Accused Products that contribute to the direct infringement of the '309 Patent by customers of the '309 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '309 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '309 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '309 Patent. Defendant has supplied (and/or continues to supply) the '309 Accused Products that comprise such component(s) to customers, who then

directly infringe one or more claims of the '309 Patent by using the '309 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

115. At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '309 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

116. Additional allegations regarding Defendant's knowledge of the '309 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

117. Defendant's infringement of the '309 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

118. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '309 Patent.

119. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '309 Patent, including, without limitation, a reasonable royalty.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,257,604

120. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

121. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '604 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Omen 32Q Monitor, HP E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Series

5 Pro 514pn, among other substantially similar products (collectively, the "'604 Accused Products").

122.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '604 Patent in connection with one of the '604 Accused Products (e.g., the HP Omen 32Q Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '604 Accused Products that it obtains during discovery.

123.    *1(a): A light-emitting device comprising: a substrate having a top surface and a first patterned unit bulged on the top surface; and* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '604 Accused Products that are covered by claim 1 of the '604 Patent.

For instance, the HP Omen 32Q Monitor is a light-emitting device comprising a substrate having a top surface and a first patterned unit bulged on the top surface, as shown in Figure 1D – 1 below:



*Figure 1D - 1*

124.    **1(b): *a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface;*** — The HP Omen 32Q Monitor comprises a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface, as shown in Figure 1D – 2 to Figure 1D – 3 below.



*Figure 1D – 2*



*Figure 1D – 3*

125.    **1(c): *wherein a base of the first patterned unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex.*** — In the HP Omen 32Q Monitor, a base of the first pattered unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned

unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex. *See, e.g.,* Figure 1D – 4 to Figure 1D – 5 below:



*Figure 1D - 4*



*Figure 1D – 5*

126. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '604 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '604 Patent under 35 U.S.C. § 271(c).

127. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '604 Patent while being on notice of (or willfully blind to) the '604 Patent. For instance, Defendant has supplied and continues to supply the '604 Accused Products to customers while knowing that use of these products in their

intended manner will directly infringe one or more claims of the '604 Patent.

128. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '604 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '604 Accused Products and uses of the '604 Accused Products.

129. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '604 Patent. For instance, Defendant knows (and/or has known) of the existence of the '604 Patent or at least should have known of the existence of the '604 Patent but were willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '604 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '604 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '604 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '604 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '604 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

130. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '604 Patent by offering for sale, selling, and/or importing one or more components in connection with the '604 Accused Products that contribute to the direct infringement of the '604 Patent by customers of the '604 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '604 Patent or was willfully blind to its

existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '604 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '604 Patent. Defendant has supplied (and/or continues to supply) the '604 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '604 Patent by using the '604 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

131.    At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '604 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

132.    Additional allegations regarding Defendant's knowledge of the '604 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

133.    Defendant's infringement of the '604 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

134.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '604 Patent.

135.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '604 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT No. 9,847,460

136.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the

Complaint as if fully set forth herein.

137.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '7,460 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Series 5 524SW, among other substantially similar products (collectively, the "'7,460 Accused Products").

138.    By way of non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '7,460 Patent in connection with one of the '7,460 Accused Products (e.g., the HP Series 5 524SW). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '7,460 Accused Products that it obtains during discovery.

139.    *1(a): A light emitting device, comprising: a semiconductor light emitting stack;* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '7,460 Accused Products that are covered by claim 1 of the '7,460Patent.

For instance, the HP Series 5 524SW is a light emitting device comprising a semiconductor light emitting stack, as shown in Figure 1E-1 below:

44



*Figure 1E – 1*

140.   ***1(b): an electrode on the semiconductor light emitting stack, the electrode comprising:*** — The HP Series 5 524SW includes an electrode on the semiconductor light emitting stack, as shown in Figure 1E – 2 below:



*Figure 1E - 2*

141.   ***1(c): a mirror layer; and adhesion layer inserted between the mirror layer and the semiconductor light emitting stack; and a bonding layer on the mirror layer; and*** — The HP Series 5 524SW includes a mirror layer, an adhesion layer between the mirror layer and the

semiconductor light emitting stack, and a bonding layer on the mirror layer, as shown in Figure 1E – 3 below:



*Figure 1E - 3*

142.    ***1(d): a plurality of pits between the bonding layer and then semiconductor light emitting stack;*** — The HP Series 5 524SW includes a plurality of pits between the bonding layer and the semiconductor light emitting stack, as shown in Figure 1E – 4 below:



*Figure 1E - 4*

143.    ***1(e): wherein one of the plurality of pits is not filled up by the adhesion layer.*** — In the HP Series 5 524SW, one of the plurality of pits is not filled up by the adhesion layer, as shown in Figure 1E – 5 below:



*Figure 1E - 5*

144. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '7,460 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '7,460 Patent under 35 U.S.C. § 271(c).

145. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '7,460 Patent while being on notice of (or willfully blind to) the '7,460 Patent. For instance, Defendant has supplied and continues to supply the '7,460 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '7,460 Patent.

146. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '7,460 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '7,460 Accused Products and uses of the '7,460 Accused Products.

147. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '7,460 Patent. For instance, Defendant knows (and/or has known) of the existence of the '7,460 Patent or at least should have known of the

existence of the '7,460 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '7,460 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '7,460 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '7,460 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '7,460 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '7,460 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

148.   Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '7,460 Patent by offering for sale, selling, and/or importing one or more components in connection with the '7,460 Accused Products that contribute to the direct infringement of the '7,460 Patent by customers of the '7,460 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '7,460 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '7,460 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '7,460 Patent. Defendant has supplied (and/or continues to supply) the '7,460 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '7,460 Patent by using the '7,460 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

149. At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '7,460 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

150. Additional allegations regarding Defendant's knowledge of the '7,460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

151. Defendant's infringement of the '7,460 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

152. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '7,460 Patent.

153. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '7,460 Patent, including, without limitation, a reasonable royalty.

## COUNT VI: INFRINGEMENT OF U.S. PATENT No. 10,038,116

154. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

155. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '116 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Omen 32Q Monitor, E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'116 Accused Products").

156. As non-limiting examples, set forth below (with claim language in bold and italics)

is exemplary evidence of infringement of claim 1 of the '116 Patent in connection with one of the '116 Accused Products (e.g., the HP Omen 32Q Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '116 Accused Products that it obtains during discovery.

157.     *1(a): A light emitting device, comprising: a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire; and* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '116 Accused Products that are covered by claim 1 of the '116 Patent.

For instance, the HP Omen 32Q Monitor is a light emitting device comprising a textured substrate including a plurality of textured structures, where the plurality of textured structures and the textured substrate are both composed of sapphire. *See, e.g.,* Figure 1F-1 to Figure 1F-3 below:



*Figure 1F – 1*

50



Al-K

*Figure 1F – 2*

O-K

*Figure 1F - 3*

158.    ***1(b): a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer,*** — The HP Omen 32Q Monitor includes a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer, as shown in Figure 1F – 4 and Figure 1F – 5 below:



*Figure 1F – 4*



*Figure 1F – 5*

159.    *1(c): wherein one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side.* — The HP Omen 32Q Monitor includes one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side as seen in Figure 1F – 7 to Figure 1F - 10:



*Figure 1F – 7*



*Figure 1F - 8*



*Figure 1F - 9*



*Figure 1F - 10*

160. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '116 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '116 Patent under 35 U.S.C. § 271(c).

161. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '116 Patent while being on

53

notice of (or willfully blind to) the '116 Patent. For instance, Defendant has supplied and continues to supply the '116 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '116 Patent.

162.   Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '116 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '116 Accused Products and uses of the '116 Accused Products.

163.   Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '116 Patent. For instance, Defendant knows (and/or has known) of the existence of the '116 Patent or at least should have known of the existence of the '116 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '116 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '116 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '116 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '116 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '116 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

164.   Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '116 Patent by offering for sale, selling, and/or importing one or more components in connection with the '116 Accused Products that contribute to the direct

infringement of the '116 Patent by customers of the '116 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '116 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '116 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '116 Patent. Defendant has supplied (and/or continues to supply) the '116 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '116 Patent by using the '116 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

165.    At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '116 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

166.    Additional allegations regarding Defendant's knowledge of the '116 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

167.    Defendant's infringement of the '116 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

168.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '116 Patent.

169.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '116 Patent, including, without limitation, a reasonable royalty.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 10,439,108

170.   Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

171.   Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '108 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Transcend Laptop, among other substantially similar products (collectively, the "'108 Accused Products").

172.   As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '108 Patent in connection with one of the '108 Accused Products (e.g. the HP Transcend Laptop). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '108 Accused Products that it obtains during discovery.

173.   *1(a): An LED light emitting device, comprising a quantum dot film, a dichroic layer, and a blue LED emitter, wherein:* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '108 Accused Products that are covered by claim 1 of the '108 Patent.

For instance, the HP Transcend Laptop is a LED light emitting device comprising a quantum dot film, a dichroic layer, and a blue LED emitter, as shown in Figure 1H-1 to Figure 1H-2 below:



*Figure 1H – 1*



*Figure 1H - 2*

174.    *1(b): the blue LED emitter is configured to emit a blue light toward the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce*

*light of longer wavelength;* — In the HP Transcend Laptop, the blue LED emitter  is configured to emit a blue light towards the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength, as shown in Figure 1H – 3 to Figure 1H – 6 below:



*Figure 1H – 3*

*Figure 1H - 4*



*Figure 1H - 5*



*Figure 1H – 6 (EDS Measurement of the quantum dot material)*

175.   ***1(c): the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer; and*** — In the HP Transcend Laptop, the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer, as shown in Figure 1H – 7 below:



*Figure 1H - 7*

176.    ***1(d): the dichroic layer is configured to: substantially reflect a first spectral portion of the blue light emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, wherein the first spectral portion is determined by a preset spectral band;*** — In the HP Transcend Laptop, the dichroic layer is configured to substantially reflect a first spectral portion of the blue light, emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, where the first spectral portion is determined by a preset band (e.g., 400nm-435nm and/or 470nm-485nm), as shown in Figure 1H – 8 and Figure 1H – 9 below:



*Figure 1H – 8*



*Figure 1H – 9*

177.    ***1(e): substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer; and***— In the HP Transcend Laptop, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer (e.g., 430nm-470nm), as shown in Figure 1H – 10 and Figure 1H – 11 below:



*Figure 1H – 10*

61

Dichroic Layer Light Emission:



*Figure 1H – 11*

178.    ***1(f): substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer.***— In the HP Transcend Laptop, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer (e.g., red and green light), as shown in Figure 1H – 12 and Figure 1H – 13 below:

QD Film Light Emission:



*Figure 1H - 12*



Dichroic Layer Light Emission:

*Figure 1H – 13*

179.   Additionally, Defendant has been and/or currently is an active inducer of infringement of the '108 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '108 Patent under 35 U.S.C. § 271(c).

180.   Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '108 Patent while being on notice of (or willfully blind to) the '108 Patent. For instance, Defendant has supplied and continues to supply the '108 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '108 Patent.

181.   Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '108 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '108 Accused Products and uses of the '108 Accused Products.

182.   Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '108 Patent. For instance, Defendant knows (and/or has known) of the existence of the '108 Patent or at least should have known of the

63

existence of the '108 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '108 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '108 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '108 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '108 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '108 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

183.   Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '108 Patent by offering for sale, selling, and/or importing one or more components in connection with the '108 Accused Products that contribute to the direct infringement of the '108 Patent by customers of the '108 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '108 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '108 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '108 Patent. Defendant has supplied (and/or continues to supply) the '108 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '108 Patent by using the '108 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

184. At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '108 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

185. Additional allegations regarding Defendant's knowledge of the '108 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

186. Defendant's infringement of the '108 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

187. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '108 Patent.

188. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '108 Patent, including, without limitation, a reasonable royalty.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,566,509

189. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

190. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '509 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'509 Accused Products").

191. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '509 Patent in connection with

one of the '509 Accused Products (e.g., the HP Series 5 Pro 514pn). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '509 Accused Products that it obtains during discovery.

192.   *1(a): A light-emitting structure, comprising: a semiconductor light-emitting element comprising a bottom surface a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface;* — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '509 Accused Products that are covered by claim 1 of the '509 Patent.

For instance, the HP Series 5 Pro 514pn is a light-emitting structure, comprising a semiconductor light-emitting element comprising a bottom surface a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface, as shown in Figure 1I - 1 below:



*Figure 1I - 1*

193.   *1(b): a first connection point arranged under the bottom surface; and* — The HP Series 5 Pro 514pn comprises a first connection point arranged under the bottom surface, as shown in Figure 1I – 2:

66



*Figure 1I - 2*

194.  ***1(c): a reflective element, comprising an inner sidewall having a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path,*** — The HP Series 5 Pro 514pn comprises a reflective element, comprising an inner sidewall having a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path, as shown in Figure 1I – 3 to Figure 1I – 5 below:



*Figure 1I - 3*



*Figure 1I - 4*



*Figure 1I – 5*

195.   ***1(d): wherein the curved path has a first slope variation from a first smaller value to a first greater value, and a second slope variation from a second greater value to a second smaller value.*** — The HP Series 5 Pro 514pn comprises a reflective element, wherein the curved path has a first slope variation from a first smaller value to a first greater value, and a second slope variation from a second greater value to a second smaller value., as shown in Figure 1I – 6 below:



*Figure 1I – 6*

196.   Additionally, Defendant has been and/or currently is an active inducer of infringement of the '509 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '509

Patent under 35 U.S.C. § 271(c).

197.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '509 Patent while being on notice of (or willfully blind to) the '509 Patent. For instance, Defendant has supplied and continues to supply the '509 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '509 Patent.

198.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '509 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '509 Accused Products and uses of the '509 Accused Products.

199.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '509 Patent. For instance, Defendant knows (and/or has known) of the existence of the '509 Patent or at least should have known of the existence of the '509 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '509 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '509 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '509 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '509 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the '509 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

200. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '509 Patent by offering for sale, selling, and/or importing one or more components in connection with the '509 Accused Products that contribute to the direct infringement of the '509 Patent by customers of the '509 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '509 Patent or were willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '509 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '509 Patent. Defendant has supplied (and/or continues to supply) the '509 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '509 Patent by using the '509 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

201. At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '509 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

202. Additional allegations regarding Defendant's knowledge of the '509 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

203. Defendant's infringement of the '509 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

204. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '509 Patent.

71

205.  Plaintiff is entitled to recover from Defendant all damages that TCV has sustained as a result of Defendant's infringement of the '509 Patent, including, without limitation, a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.  That Judgment be entered that Defendant has infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.  An award of damages sufficient to compensate Plaintiff for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

C.  That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D.  Costs and expenses in this action;

E.  An award of prejudgment and post-judgment interest; and

F.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues so triable.

Dated:  March 25, 2026

By: */s/ Mark D. Siegmund*
Mark D. Siegmund
TX Bar No. 24117055
msiegmund@cjsjlaw.com
Shuya "Grace" Yang
TX Bar No. 24144144
gyang@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

William D. Ellerman
TX Bar No. 24007151
wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

Sean M. Sullivan (*pro hac vice* forthcoming)
sullivan@ls3ip.com
Cole B. Richter (*pro hac vice* forthcoming)
richter@ls3ip.com
Michael P. Boyea (*pro hac vice* forthcoming)
boyea@ls3ip.com
Jae Y. Pak (*pro hac vice* forthcoming)
pak@ls3ip.com
Andrew Gerla (*pro hac vice* forthcoming)
gerla@ls3ip.com
**LEE SULLIVAN SHEA & SMITH LLP**
656 West Randolph Street, Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002
Fax: (312) 754-0003

***Attorneys for Plaintiff Tau Ceti Ventures LLC***

73