**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| TAU CETI VENTURES LLC,<br><br>Plaintiff<br><br>v.<br><br>HP INC.<br><br>Defendant | Civil Action No. 1:26-cv-00716-RP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT HP INC.'S ANSWER TO PLAINTIFF TAU CETI VENTURES LLC'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendant HP Inc. ("Defendant" or "HP"), by and through its undersigned counsel, for its Answer to the Complaint (Dkt. 1) filed by Plaintiff Tau Ceti Ventures LLC ("Plaintiff" or "TCV"), states as follows:

## SUMMARY

1. Plaintiff is the owner by assignment of all right, title and interest in United States Patent Nos. 8,492,780; 8,552,460; 8,766,309; 9,257,604; 9,847,460; 10,038,116; 10,439,108; and 10,566,509 (collectively, the "Patents-in-Suit"; attached hereto as Exhibits A-H, respectively).

**ANSWER 1:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and therefore denies them.

2. Defendant infringes the Patents-in-Suit by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, a number of its commercial products (e.g., laptops and monitors) including, *inter alia*, the HP Omen 32Q Monitor, HP Series 5 524SW Monitor; HP Series 5 Pro 514pn Monitor, HP E14 G4

Portable Monitor, HP Transcend Laptop, HP Omnibook 5 Flip, and other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

**ANSWER 2:** HP admits that it sells certain of its products in the United States, including in this District, but denies that those activities constitute acts of patent infringement in this District or elsewhere, as alleged in the Complaint. Except as explicitly admitted, HP denies the allegations contained in Paragraph 2 of the Complaint.

3. By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendant's infringement of the Patents-in-Suit.

**ANSWER 3:** HP admits that by this action, Plaintiff seeks to obtain compensation from HP for alleged infringement of the Patents-in-Suit. HP denies that it has infringed or continues to infringe the Patents-in-Suit. Except as explicitly admitted, HP denies the allegations contained in Paragraph 3 of the Complaint.

## NATURE OF THE ACTION

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

**ANSWER 4:** HP admits that the Complaint purports to allege claims arising under the patent laws of the United States but denies that Plaintiff has any claim thereunder. Except as explicitly admitted, HP denies the allegations in Paragraph 4 of the Complaint.

5. Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in

the United States, including in this District, and/or by importing the Accused Products into the United States.

**ANSWER 5:** Denied.

6. Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office. Plaintiff seeks monetary damages for Defendant's infringement of the Patents-in-Suit.

**ANSWER 6:** HP denies that it has infringed or continues to infringe the Patents-in-Suit and further denies that Plaintiff is entitled to monetary damages. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint and therefore denies them.

## THE PARTIES

7. Plaintiff Tau Ceti Ventures LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

**ANSWER 7:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint and therefore denies them.

8. Defendant HP is a corporation organized and existing under the laws of the State of Delaware with a place of business at 1501 Page Mill Road, Palo Alto, CA 94304. HP is registered to do business in the State of Texas, and its registered agent is CT Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

**ANSWER 8:** Admitted.

9. On information and belief, Defendant, through its online store, directly and/or indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States

and/or imports the Accused Products into the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with the Accused Products.

**ANSWER 9:** HP admits that certain of its products are sold online and through third party retail stores in the United States, including in this District, but denies that those activities constitute acts of patent infringement in this District or elsewhere, as alleged in the Complaint. Except as explicitly admitted, HP denies the allegations contained in Paragraph 9 of the Complaint.

## JURISDICTION AND VENUE

10. As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER 10:** The allegations contained in Paragraph 10 call for a legal conclusion to which no response is required. To the extent a response is required, HP admits that this Court has subject matter jurisdiction over actions for patent infringement under 28 U.S.C. §§ 1331 and 1338(a). Except as explicitly admitted, HP denies the allegations in Paragraph 10 of the Complaint.

11. This Court has personal jurisdiction over Defendant because (i) availed itself of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused

Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

**ANSWER 11:** The allegations contained in Paragraph 11 call for a legal conclusion to which no response is required. To the extent a response is required, for purposes of this action only, HP does not contest personal jurisdiction by this Court over HP. Except as explicitly admitted, HP denies the allegations in Paragraph 11 of the Complaint.

12. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, HP has committed acts of patent infringement in this District and has a regular and established place of business in this District, including at 3800 Quick Hill Rd. #100, Austin, Texas 78728. In fact, HP previously admitted that it has more than 150 employees working at that location. *See, e.g.*, *Unification Technologies LLC, v. HP Inc.*, No. 6:20-cv-501-ADA, Dkt. No. 24 (W.D. Tex. Sept. 25, 2020)) (HP requesting transfer to the Austin Division). HP also admitted that it has at least two data centers in this District. *Id.*

**ANSWER 12:** HP denies that it has committed acts of patent infringement in this District or elsewhere. HP further denies that it has a regular and established place of business in this District, including at 3800 Quick Hill Rd. #100, Austin, Texas 78728. HP admits that it requested transfer to the Austin Division in *Unification Technologies LLC, v. HP Inc.*, No. 6:20-cv-501-ADA on September 25, 2020 (Dkt. 24). Based on the facts at the time of the filing of the Complaint, HP denies that venue is proper in this District for Plaintiff's patent infringement claims against HP under 28 U.S.C. §1400. HP further denies that this District is convenient pursuant to 28 U.S.C. §1404 or otherwise. Except as explicitly admitted, HP denies the allegations in Paragraph 12 of the Complaint.

## PATENTS-IN-SUIT

**U.S. Patent No. 8,492,780**

13. U.S. Patent No. 8,492,780 (the "'780 Patent") is titled "Light-emitting device and manufacturing method thereof" and was issued on July 23, 2013. A true and correct copy of the '780 Patent is attached as Exhibit A.

**ANSWER 13:** HP admits that the '780 Patent states on its face that it is titled "Light-emitting device and manufacturing method thereof" and was issued on July 23, 2013. HP admits that a document purporting to be a copy of the '780 Patent is attached to the Complaint as Exhibit A. Except as explicitly admitted, HP denies the allegations in Paragraph 13 of the Complaint.

14. The '780 Patent was filed on February 11, 2010 as U.S. Patent Application No. 12/703,964, and claims priority to Taiwan Patent Application No. 098104423, filed February 11, 2009.

**ANSWER 14:** HP admits that the '780 Patent states on its face that it was filed on February 11, 2010 as U.S. Patent Application No. 12/703,964, and claims priority to Taiwan Patent Application No. 098104423, filed February 11, 2009. Except as explicitly admitted, HP denies the allegations in Paragraph 14 of the Complaint.

15. Plaintiff is the owner of all rights, title, and interest in and to the '780 Patent, with the full and exclusive right to bring suit to enforce the '780 Patent, including the right to recover for past infringement.

**ANSWER 15:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint and therefore denies them.

16. The '780 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 16:** The allegations contained in Paragraph 16 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies the allegations in Paragraph

16 of the Complaint.

17. The ’780 Patent recognized problems with existing light emitting devices at the time of the invention of the ’780 Patent.

**ANSWER 17:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 17 of the Complaint and therefore denies them.

18. For instance, with reference to FIG. 1 below, the ’780 Patent recognized that, “because the surface of the transparent substrate 10 of the conventional light emitting device 100 … is substantially flat and the refractive index of the transparent substrate 10 is different from the refractive index of the external environment, the total internal reflection (TIR) occurs when a light A emitted from the active layer 122.” ’780 Patent at 1:55-60.




FIG.1
(Related Art)

**ANSWER 18:** HP admits that Paragraph 18 purports to show FIG. 1 of the ’780 Patent and quote from the ’780 Patent. HP admits only that the ’780 Patent exists and that it is a written document. The ’780 Patent speaks for itself. To the extent the allegations of Paragraph 18 characterize, summarize, or otherwise purport to describe the contents of the ’780 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 18 of the Complaint.

19. As such, the ’780 Patent recognized that “the light extraction efficiency from [a traditional] light emitting device [ ] is reduced drastically.” *Id.*, 1:61:-62.

**ANSWER 19:** HP admits that Paragraph 19 purports to quote from the '780 Patent and that the '780 Patent speaks for itself. To the extent the allegations of Paragraph 19 characterize, summarize, or otherwise purport to describe the contents of the '780 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 19 of the Complaint.

20. In view of the foregoing, the '780 Patent discloses a "light-emitting device" that comprises a "substrate" that includes a "a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer," where "the sidewall of the substrate comprises a first area and a second area," and "the morphology of the first area is substantially flat and the morphology of the second area is substantially textured." *Id.*, cl. 1. According to the '780 Patent, "light extraction efficiency of the light emitting device may be enhanced by the discontinuous structure on the sidewall." *Id.*, 2:9-11.

**ANSWER 20:** HP admits that Paragraph 20 purports to quote from the '780 Patent and that the '780 Patent speaks for itself. To the extent the allegations of Paragraph 19 characterize, summarize, or otherwise purport to describe the contents of the '780 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 20 of the Complaint.

**U.S. Patent No. 8,552,460**

21. U.S. Patent No. 8,552,460 (the "'2,460 Patent") is titled "Package for a light emitting element" and was issued on October 8, 2013. A true and correct copy of the '2,460 Patent is attached as Exhibit B.

**ANSWER 21:** HP admits that the '2,460 Patent states on its face that it is titled "Package for a light emitting element" and was issued on October 8, 2013. HP admits that a document purporting to be a copy of the '2,460 Patent is attached to the Complaint as Exhibit B. Except as explicitly

admitted, HP denies the allegations in Paragraph 21 of the Complaint.

22. The '2,460 Patent was filed on September 8, 2011 as U.S. Patent Application No. 13/227,703, which is a division of U.S. Patent Application 12/257,203, filed on October 23, 2008, which is a continuation-in-part of U.S. Patent Application No. 11/336,094, filed on January 20, 2006, from which it also claims priority.

**ANSWER 22:** HP admits that the '2,460 Patent states on its face that it was filed on September 8, 2011 as U.S. Patent Application No. 13/227,703, which is a division of U.S. Patent Application 12/257,203, filed on October 23, 2008, which is a continuation-in-part of U.S. Patent Application No. 11/336,094, filed on January 20, 2006, from which it also claims priority. Except as explicitly admitted, HP denies the allegations in Paragraph 22 of the Complaint.

23. Plaintiff is the owner of all rights, title, and interest in and to the '2,460 Patent, with the full and exclusive right to bring suit to enforce the '2,460 Patent, including the right to recover for past infringement.

**ANSWER 23:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint and therefore denies them.

24. The '2,460 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 24:** The allegations contained in Paragraph 24 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies that the allegations in Paragraph 24 of the Complaint.

25. The '2,460 Patent recognized problems with existing light emitting devices at the time of the invention of the '2,460 Patent.

**ANSWER 25:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 25 of the Complaint and therefore denies them. To the extent the

allegations of Paragraph 25 characterize, summarize, or otherwise purport to describe the contents of the ’2,460 Patent, HP denies those allegations.

26. For instance, the ’2,460 Patent recognized that, “[h]igh brightness (HB) LED chips are being operated at ever-increasing power level… [and] that heat generated by the LED chips has to be removed by the package to the surroundings.” ’2,460 Patent at 1:29-33. At the time, the “combination of the LED substrate, the submount, and the package material [were] poorly suited for transferring heat from the LED chip to the surroundings.” *Id.*, at 1:34-36. Accordingly, the ’2,460 Patent recognized, among many other things, that a thin membrane of silicone could allow for “surface mount technology, which is facilitated by micro-via technology,” as well as improve “compatibility of thermal properties (e.g., the coefficient of thermal expansion) of the LED and LED package” *Id.*, at 7:67-8:9.

**ANSWER 26:** HP admits that Paragraph 26 purports to quote from the ’2,460 Patent. HP admits only that the ’2,460 Patent exists and that it is a written document. The ’2,460 Patent speaks for itself. To the extent the allegations of Paragraph 26 characterize, summarize, or otherwise purport to describe the contents of the ’2,460 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 26 of the Complaint.

27. In view of the foregoing, and to address problems such as “a decrease in thermal conductivity that limits the physical size and power of the chips that can be used in [an LED] package,” the ’2,460 Patent discloses a “high-brightness LED module” that includes “a substrate (also referred to as submount or platform) with a recess in which a light emitting element is mounted,” where “[t]he recess is defined by sidewalls and a membrane” and “[a]t least two through-holes filled with electrically conducting material (also referred to as micro-vias or through-contacts) are disposed in the membrane to electrically connect the light emitting element

to the exterior of the package." *Id.*, at 1:39:42, 1:47-54.

**ANSWER 27:** HP admits that Paragraph 27 purports to quote from the '2,460 Patent and that the '2,460 Patent speaks for itself. To the extent the allegations of Paragraph 27 characterize, summarize, or otherwise purport to describe the contents of the '2,460 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 27 of the Complaint.

**U.S. Patent No. 8,766,309**

28. U.S. Patent No. 8,766,309 (the "'309 Patent") is titled "Omnidirectional reflector" and was issued on July 1, 2014. A true and correct copy of the '309 Patent is attached as Exhibit C.

**ANSWER 28:** HP admits that the '309 Patent states on its face that it is titled "Omnidirectional reflector" and was issued on July 1, 2014. HP admits that a document purporting to be a copy of the '309 Patent is attached to the Complaint as Exhibit C. Except as explicitly admitted, HP denies the allegations in Paragraph 28 of the Complaint.

29. The '309 Patent was filed on November 7, 2013 as U.S. Patent Application No. 14/073,915, which is a continuation application of U.S. Patent Application No. 13/857,678, filed on Apr. 5, 2013, which is a continuation application of U.S. Patent Application No. 12/202,167, filed Aug. 29, 2008, which claims priority to Provisional Patent Application No. 61/089,796, filed Aug. 18, 2008.

**ANSWER 29:** HP admits that the '309 Patent states on its face that it was filed on November 7, 2013 as U.S. Patent Application No. 14/073,915, which is a continuation application of U.S. Patent Application No. 13/857,678, filed on Apr. 5, 2013, which is a continuation application of U.S. Patent Application No. 12/202,167, filed Aug. 29, 2008, which claims priority to Provisional

Patent Application No. 61/089,796, filed Aug. 18, 2008. Except as explicitly admitted, HP denies the allegations in Paragraph 29 of the Complaint.

30. Plaintiff is the owner of all rights, title, and interest in and to the ’309 Patent, with the full and exclusive right to bring suit to enforce the ’309 Patent, including the right to recover for past infringement.

**ANSWER 30:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 30 of the Complaint and therefore denies them.

31. The ’309 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 31:** The allegations contained in Paragraph 31 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies that the allegations in Paragraph 31 of the Complaint.

32. The ’309 Patent recognized problems with existing LEDs at the time of the invention of the ’309 Patent.

**ANSWER 32:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 32 of the Complaint and therefore denies them. To the extent the allegations of Paragraph 32 characterize, summarize, or otherwise purport to describe the contents of the ’309 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 32 of the Complaint.

33. For instance, the ’309 Patent discloses that “reflectors have been formed as part of [an] LED in order to direct the light in a desired direction and away from any light-absorbing substrates,” and “[o]ne typical reflector is a distributed Bragg reflector (DBR), which uses alternating layers of materials having different refractive indices to reflect the emitted light.” ’309 Patent at 1:40-45. However, the ’309 Patent discloses that, “[w]hile a DBR is helpful … it is not

omnidirectional, as the reflectivity of the DBR drops when the angle of incidence of the light impacting the DBR increases relative to normal to the surface of the DBR." *Id.*, at 1:45-49. According to the '309 Patent, "[t]his drop in the efficiency of the DBR causes a corresponding drop in efficiency of the LED." *Id.*, at 1:49-50. Thus, the '309 Patent identified that "what is needed is a reflector that has a greater efficiency for a larger range of incident angles." *Id.*, at 1:51-52.

**ANSWER 33:** HP admits that Paragraph 33 purports to quote from the '309 Patent. HP admits only that the '309 Patent exists and that it is a written document. The '309 Patent speaks for itself. To the extent the allegations of Paragraph 34 characterize, summarize, or otherwise purport to describe the contents of the '309 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 33 of the Complaint.

34. In this regard, the '309 Patent discloses that "[t]hese and other problems are generally solved or circumvented, and technical advantages are generally achieved, by preferred embodiments of the present invention which provide for an omnidirectional reflector incorporated with a light-emitting diode (LED)." *Id.*, at 1:56-60.

**ANSWER 34:** HP admits that Paragraph 34 purports to quote from the '309 Patent and that the '309 Patent speaks for itself. To the extent the allegations of Paragraph 34 characterize, summarize, or otherwise purport to describe the contents of the '309 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 34 of the Complaint.

**U.S. Patent No. 9,257,604**

35. U.S. Patent No. 9,257,604 (the "'604 Patent") is titled "Light-emitting device having a patterned surface" and was issued on February 9, 2016. A true and correct copy of the '604 Patent is attached as Exhibit D.

**ANSWER 35:** HP admits that the ’604 Patent states on its face that it is titled “Light-emitting device having a patterned surface” and was issued on February 9, 2016. HP admits that a document purporting to be a copy of the ’604 Patent is attached to the Complaint as Exhibit D. Except as explicitly admitted, HP denies the allegations in Paragraph 35 of the Complaint.

36. The ’604 Patent was filed on December 18, 2013 as U.S. Patent Application No. 14/132,819, which is a continuation application of U.S. Patent Application No. 12/646,553, filed on December 23, 2009, which is a continuation-in-part of U.S. Patent Application No. 12/222,548, filed on August 12, 2008, which claims prior to Taiwan Patent Application No. 097150633, filed on December 24, 2008.

**ANSWER 36:** HP admits that the ’604 Patent states on its face that the ’604 Patent was filed on December 18, 2013 as U.S. Patent Application No. 14/132,819, which is a continuation application of U.S. Patent Application No. 12/646,553, filed on December 23, 2009, which is a continuation-in-part of U.S. Patent Application No. 12/222,548, filed on August 12, 2008, which claims prior to Taiwan Patent Application No. 097150633, filed on December 24, 2008. Except as explicitly admitted, HP denies the allegations in Paragraph 36 of the Complaint.

37. Plaintiff is the owner of all rights, title, and interest in and to the ’604 Patent, with the full and exclusive right to bring suit to enforce the ’604 Patent, including the right to recover for past infringement.

**ANSWER 37:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 37 of the Complaint and therefore denies them.

38. The ’604 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 38:** The allegations contained in Paragraph 38 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies the allegations in Paragraph

38 of the Complaint.

39. The ’604 Patent recognized problems with existing LEDs at the time of the invention of the ’604 Patent.

**ANSWER 39:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 39 of the Complaint and therefore denies them. To the extent the allegations of Paragraph 39 characterize, summarize, or otherwise purport to describe the contents of the ’604 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 39 of the Complaint.

40. For instance, the ’604 Patent recognized that “[s]urface roughening technology is one of the efficient methods to enhance luminance.” ’604 Patent at 1:35-36. In particular, “[t]he ratio of the pattern width to the width between patterns of the substrate surface [ ] is generally designed to be around 1,” and thus, “a considerable portion of the substrate surface [ ] is still parallel to the surface of the active layer [ ], and the light emitted from the active layer [ ] to the parallel substrate surface is easily reflected back to the epitaxial stack because of total internal reflection (TIR) effect and absorbed by the epitaxial stack to generate heat.” *Id.*, at 1:52-59. According to the ’604 Patent, this “worsens both the light extraction efficiency and the heat dissipation problems.” *Id.*, at 1:59-61. While the ’604 Patent recognized that “the pattern is usually formed deeper in order to compensate the light loss due to the parallel (unpatterned) region,” “the high aspect ratio of the deeper pattern causes difficulty for subsequently epitaxial growth and adversely affects the epitaxial quality.” *Id.*, at 1:61-65.

**ANSWER 40:** HP admits that Paragraph 40 purports to quote from the ’604 Patent. HP admits only that the ’604 Patent exists and that it is a written document. The ’604 Patent speaks for itself. To the extent the allegations of Paragraph 40 characterize, summarize, or otherwise purport to

describe the contents of the ’604 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 40 of the Complaint.

41. The ’604 Patent further recognized “[a]nother prior technique for roughen surface” which involved utilizing a “mechanically polishing method to form a randomly distributed rough patterns on the substrate surface.” *Id.*, at 1:66-2:1. However, the ’604 Patent discloses that “it is hard to control the roughened dimension, such as the depth or the width,” and “the epitaxial quality is not good by growing an epitaxial layer on the randomly rough surface.” *Id.*, at 2:2-4.

**ANSWER 41:** HP admits that Paragraph 41 purports to quote from the ’604 Patent and that the ’604 Patent speaks for itself. To the extent the allegations of Paragraph 41 characterize, summarize, or otherwise purport to describe the contents of the ’604 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 41 of the Complaint.

42. Accordingly, the ’604 Patent discloses a “light-emitting device” that comprises “a substrate having a first patterned unit; and a light-emitting stack on the substrate and having an active layer with a first surface; wherein the first patterned unit, protruding in a direction from the substrate to the light-emitting stack, has side surfaces abutting with each other and substantially non-parallel to the first surface in cross-sectional view, and has a non-polygon shape in top view.” *Id.*, at 2:8-15.

**ANSWER 42:** HP admits that Paragraph 42 purports to quote from the ’604 Patent and that Paragraph 42 speaks for itself. To the extent the allegations of Paragraph 42 characterize, summarize, or otherwise purport to describe the contents of the ’604 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 42 of the Complaint.

**U.S. Patent No. 9,847,460**

43. U.S. Patent No. 9,847,460 (the "'7,460 Patent") is titled "Light emitting device with reflective electrode" and was issued on December 19, 2017. A true and correct copy of the '7,460 Patent is attached as Exhibit E.

**ANSWER 43:** HP admits that the '7,460 Patent states on its face that it is titled "Light emitting device with reflective electrode" and was issued on December 19, 2017. HP admits that a document purporting to be a copy of the '7,460 Patent is attached to the Complaint as Exhibit E. Except as explicitly admitted, HP denies the allegations in Paragraph 43 of the Complaint.

44. The '7,460 Patent was filed on March 16, 2016 as U.S. Patent Application No. 15/071,978, which is a continuation application of U.S. Patent Application No. 13/474,362, filed on May 17, 2012.

**ANSWER 44:** HP admits that the '7,460 Patent states on its face that it was filed on March 16, 2016 as U.S. Patent Application No. 15/071,978, which is a continuation application of U.S. Patent Application No. 13/474,362, filed on May 17, 2012. Except as explicitly admitted, HP denies the allegations in Paragraph 44 of the Complaint.

45. Plaintiff is the owner of all rights, title, and interest in and to the '7,460 Patent, with the full and exclusive right to bring suit to enforce the '7,460 Patent, including the right to recover for past infringement.

**ANSWER 45:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 45 of the Complaint and therefore denies them.

46. The '7,460 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 46:** The allegations contained in Paragraph 46 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies the allegations in Paragraph

46 of the Complaint.

47. The ’7,460 Patent recognized problems with existing light emitting devices at the time of the invention of the ’7,460 Patent.

**ANSWER 47:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 47 of the Complaint and therefore denies them. To the extent the allegations of Paragraph 47 characterize, summarize, or otherwise purport to describe the contents of the ’7,460 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 47 of the Complaint.

48. For instance, the ’7,460 Patent recognized that, “[c]urrently, the inner light-emitting efficiency of the light-emitting diode is about 50% to 80%, but a part of the light may be absorbed by the electrode or the light-emitting layer so the total light-emitting efficiency is degraded.” ’7,460 Patent at 1:21-25. Thus, “the mirror layer under the electrode has been provided to solve the problem.” *Id.*, at 1:25-26. However, “[w]hen the electrical current is applied into the light-emitting diode and flows through the electrode, the material of the mirror layer may be migrated to the electrode,” and “[t]he migration of the material of the mirror layer causes the increase of the resistance of electrode and lowers the light-emitting efficiency of the light-emitting diode.” *Id.*, at 1:30-35. Thus, the ’7,460 Patent discloses that “a barrier layer 11 is provided to prevent the migration of the material of the mirror layer 12 …..” *Id.*, at 1:35-37. Nevertheless, the ’7,460 Patent discloses that “in recent years, as the light from a single chip is required to emit more, the electrical current applied to the light-emitting diode is increased, and the large electrical current may destroy the barrier layer 11.” *Id.*, at 1:37-41.

**ANSWER 48:** HP admits that Paragraph 48 purports to quote from the ’7,460 Patent. HP admits only that the ’7,460 Patent exists and that it is a written document. The ’7,460 Patent speaks

for itself. To the extent the allegations of Paragraph 48 characterize, summarize, or otherwise purport to describe the contents of the ’7,460 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 48 of the Complaint.

49. The ’7,460 Patent further discloses that “[t]he conventional mirror layer 12 is formed of Al or Ag, and the conventional barrier layer 11 is formed by a single metal which can defense the migration of the mirror layer 12, such as Ti or Mo,” but “it is not easy to form a barrier layer 11 which has a uniform thickness on the mirror layer 12.” *Id.*, at 1:42-47. Moreover, the ’460 Patent discloses that, “if a high electrical current flows through the electrode, the barrier layer 11 formed by two different metals is usually still destroyed by the material of the mirror layer 12 …. and, thus, the conductivity of the electrode 4 substantially decreases.” *Id.*, at 1:53-62.

**ANSWER 49:** HP admits that Paragraph 49 purports to quote from the ’7,460 Patent and that the ’7,460 Patent speaks for itself. To the extent the allegations of Paragraph 49 characterize, summarize, or otherwise purport to describe the contents of the ’7,460 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 49 of the Complaint.

50. Accordingly, the ’7,460 Patent discloses “[a] light-emitting device, comprises: a semiconductor light emitting stack; an electrode on the semiconductor light emitting stack, the electrode comprising a mirror layer, an adhesion layer inserted between the mirror layer and the semiconductor light emitting stack, a bonding layer; and a plurality of pits between the bonding layer and the semiconductor light emitting stack, wherein one of the plurality of pits is not filled up by the adhesion layer.” *Id.*, at 1:66-2:6.

**ANSWER 50:** HP admits that Paragraph 50 purports to quote from the ’7,460 Patent and that the ’7,460 Patent speaks for itself. To the extent the allegations of Paragraph 50 characterize,

summarize, or otherwise purport to describe the contents of the '7,460 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 50 of the Complaint.

**U.S. Patent No. 10,038,116**

51. U.S. Patent No. 10,038,116 (the "'116 Patent") is titled "Light-emitting device having a patterned substrate and the method thereof" and was issued on July 31, 2018. A true and correct copy of the '116 Patent is attached as Exhibit F.

**ANSWER 51:** HP admits that the '116 Patent states on its face that it is titled ""Light-emitting device having a patterned substrate and the method thereof" and was issued on July 31, 2018. HP admits that a document purporting to be a copy of the '116 Patent is attached to the Complaint as Exhibit F. Except as explicitly admitted, HP denies the allegations in Paragraph 51 of the Complaint.

52. The '116 Patent was filed on August 30, 2017 as U.S. Patent Application No. 15/691,357, which is a continuation application of U.S. Patent Application No. 14/986,791, filed on Jan. 4, 2016, which is a continuation application of U.S. Patent Application No. 13/618,544, filed on Sep. 14, 2012, issued as U.S. Pat. No. 9,231,151, which is a continuation application of U.S. Patent Application No. 12/860,599, filed on Aug. 20, 2010, issued as U.S. Pat. No. 8,648,522, which is a continuation application of U.S. Patent Application No. 11/878,961, filed Jul. 30, 2007, issued as U.S. Pat. No. 7,825,577, which claims prior to Taiwan Patent App. No. 095127924, filed Jul. 28, 2006.

**ANSWER 52:** HP admits that the '116 Patent states on its face that it was filed on August 30, 2017 as U.S. Patent Application No. 15/691,357, which is a continuation application of U.S. Patent Application No. 14/986,791, filed on Jan. 4, 2016, which is a continuation application of

U.S. Patent Application No. 13/618,544, filed on Sep. 14, 2012, issued as U.S. Pat. No. 9,231,151, which is a continuation application of U.S. Patent Application No. 12/860,599, filed on Aug. 20, 2010, issued as U.S. Pat. No. 8,648,522, which is a continuation application of U.S. Patent Application No. 11/878,961, filed Jul. 30, 2007, issued as U.S. Pat. No. 7,825,577, which claims prior to Taiwan Patent App. No. 095127924, filed Jul. 28, 2006. Except as explicitly admitted, HP denies the allegations in Paragraph 52 of the Complaint.

53. Plaintiff is the owner of all rights, title, and interest in and to the ’116 Patent, with the full and exclusive right to bring suit to enforce the ’116 Patent, including the right to recover for past infringement.

**ANSWER 53:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 53 of the Complaint and therefore denies them.

54. The ’116 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 54:** The allegations contained in Paragraph 54 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies the allegations in Paragraph 54 of the Complaint.

55. The ’116 Patent recognized problems with existing LEDs at the time of the invention of the ’116 Patent.

**ANSWER 55:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 55 of the Complaint and therefore denies them. To the extent the allegations of Paragraph 55 characterize, summarize, or otherwise purport to describe the contents of the ’116 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 54 of the Complaint.

56. For instance, the ’116 Patent recognized that “[s]urface roughening has been an

effective means to enhance the light-extraction efficiency, whether on a substrate or on a top semiconductor layer." '116 Patent at 1:38-40. However, the '116 Patent discloses that, "[a]lthough the light extraction efficiency is enhanced because of the roughened surface of the substrate [ ], the surface damages such as the alteration of the surface composition and the lattice distortion are resulted from the roughening process as well." *Id.*, at 1:50-54. And, in some instances, "part of the mask materials or the reactive ions are sputtered onto and even doped into a certain depth of the substrate, therefore the quality of the epitaxy layer deposited thereafter is downgraded." *Id.*, at 1:54-58. The '116 Patent further discloses that "[t]he mechanical polishing process also damages the lattice structure of the substrate surface, such that the quality of the successively grown semiconductor layer, such GaN, is worse, and the internal quantum efficiency is lowered." *Id.*, at 1:58-62.

**ANSWER 56:** HP admits that Paragraph 56 purports to quote from the '116 Patent. HP admits only that the '116 Patent exists and that it is a written document. The '116 Patent speaks for itself. To the extent the allegations of Paragraph 56 characterize, summarize, or otherwise purport to describe the contents of the '116 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 56 of the Complaint.

57. Accordingly, the '116 Patent claims a "light-emitting device" that comprises "a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire, and "a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer," where "one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is

different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side." *Id.*, at Cl. 1.

**ANSWER 57:** HP admits that Paragraph 57 purports to quote from the '116 Patent and that the '116 Patent speaks for itself. To the extent the allegations of Paragraph 57 characterize, summarize, or otherwise purport to describe the contents of the '116 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 57 of the Complaint.

**U.S. Patent No. 10,439,108**

58. U.S. Patent No. 10,439,108 (the "'108 Patent") is titled "LED light emitting device for display device, and display device" and was issued on October 8, 2019. A true and correct copy of the '108 Patent is attached as Exhibit G.

**ANSWER 58:** HP admits that the '108 Patent states on its face that it is titled "LED light emitting device for display device, and display device" and was issued on October 8, 2019. HP admits that a document purporting to be a copy of the '108 Patent is attached to the Complaint as Exhibit G. Except as explicitly admitted, HP denies the allegations in Paragraph 58 of the Complaint.

59. The '108 Patent was filed on July 27, 2018 as U.S. Patent Application No. 16/047,979, which is a continuation of U.S. Patent Application No. 14/751,393, filed on Jun. 26, 2015, which claims priority to Chinese Patent Application No. 201510009581.X, filed on Jan. 8, 2015.

**ANSWER 59:** HP admits that the '108 Patent states on its face that it was filed on July 27, 2018 as U.S. Patent Application No. 16/047,979, which is a continuation of U.S. Patent Application No. 14/751,393, filed on Jun. 26, 2015, which claims priority to Chinese Patent

Application No. 201510009581.X, filed on Jan. 8, 2015. Except as explicitly admitted, HP denies the allegations in Paragraph 59 of the Complaint.

60. Plaintiff is the owner of all rights, title, and interest in and to the '108 Patent, with the full and exclusive right to bring suit to enforce the '108 Patent, including the right to recover for past infringement.

**ANSWER 60:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 60 of the Complaint and therefore denies them.

61. The '108 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 61:** The allegations contained in Paragraph 61 call for a legal conclusion to which no response is required. To the extent a response is required, HP denies the allegations in Paragraph 61 of the Complaint.

62. The '108 Patent recognized problems with existing light emitting devices at the time of the invention of the '108 Patent.

**ANSWER 62:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 60 of the Complaint and therefore denies them. To the extent the allegations of Paragraph 62 characterize, summarize, or otherwise purport to describe the contents of the '108 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 62 of the Complaint.

63. For instance, the '108 Patent discloses the following:

> [A] quantum dot film is fabricated by including the cadmium in a quantum dot material to improve the light emission efficiency and brightness of the quantum dot material, but the heavy metal cadmium is a highly poisonous substance, so the concentration of the quantum dot material in the quantum dot film has to be lowered. However if the concentration of the quantum dot material in the quantum dot film is low, then there may be a considerable gap between adjacent quantum dot components, and taking a blue LED as an example, light in complementary colors to blue light is red light and green light, and when the blue light emitted by

> the blue LED passes the quantum dot film, the majority of the blue light may pass the gap between the adjacent quantum dot components, and only the minority of the blue light may excite the quantum dot material to generate red light and green light mixed with the blue light into white light, thus resulting in a low utilization ratio of the blue light. Moreover too much of the blue light is transmitted so that the proportion of the blue light in the white light generated from the mixing is high, and the proportion of the red light and the green light is low, thus making the white light generated from the mixing bluish as a whole, which may degrade the light emission effect of the LED light emitting device.
>
> ’108 Patent at 2:58-3:14.

**ANSWER 63:** HP admits that Paragraph 63 purports to quote from the ’108 Patent. HP admits only that the ’108 Patent exists and that it is a written document. The ’108 Patent speaks for itself. To the extent the allegations of Paragraph 63 characterize, summarize, or otherwise purport to describe the contents of the ’108 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 63 of the Complaint.

64. In view of the foregoing, the ’108 Patent discloses “an LED light emitting device for a display device, and a display device so as to improve both the utilization ratio of light emitted by an LED lamp and the light emission effect of the LED light emitting device.” *Id.*, at 3:15-29.

**ANSWER 64:** HP admits that Paragraph 64 purports to quote from the ’108 Patent and that the ’108 Patent speaks for itself. To the extent the allegations of Paragraph 64 characterize, summarize, or otherwise purport to describe the contents of the ’108 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 64 of the Complaint.

**U.S. Patent No. 10,566,509**

65. U.S. Patent No. 10,566,509 (the “’509 Patent”) is titled “Light emitting structure” and was issued on February 18, 2020. A true and correct copy of the ’509 Patent is attached as Exhibit I.

**ANSWER 65:** HP admits that the '509 Patent states on its face that it is titled "Light emitting structure" and was issued on February 18, 2020. HP admits that a document purporting to be a copy of the '509 Patent is attached to the Complaint as Exhibit H. Except as explicitly admitted, HP denies the allegations in Paragraph 65 of the Complaint.

66. The '509 Patent was filed on August 28, 2017 as U.S. Patent Application No. 15/688,339, which is a continuation of U.S. Patent Application No. 15/285,678, filed October 5, 2016, which is a continuation of U.S. Patent Application No. 14/536,169, filed November 7, 2014, which is a continuation of U.S. Patent Application No. 13/227,841, filed September 8, 2011, which claims priority to Taiwan Patent Application No. 099130428, filed September 8, 2010.

**ANSWER 66:** HP admits that the '509 Patent states on its face that it was filed on August 28, 2017 as U.S. Patent Application No. 15/688,339, which is a continuation of U.S. Patent Application No. 15/285,678, filed October 5, 2016, which is a continuation of U.S. Patent Application No. 14/536,169, filed November 7, 2014, which is a continuation of U.S. Patent Application No. 13/227,841, filed September 8, 2011, which claims priority to Taiwan Patent Application No. 099130428, filed September 8, 2010. Except as explicitly admitted, HP denies the allegations in Paragraph 66 of the Complaint.

67. Plaintiff is the owner of all rights, title, and interest in and to the '509 Patent, with the full and exclusive right to bring suit to enforce the '509 Patent, including the right to recover for past infringement.

**ANSWER 67:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 67 of the Complaint and therefore denies them.

68. The '509 Patent is valid and enforceable under United States Patent Laws.

**ANSWER 68:** The allegations contained in Paragraph 68 call for a legal conclusion to which

no response is required. To the extent a response is required, HP denies the allegations in Paragraph 68 of the Complaint.

69. The '509 Patent recognized problems with existing light emitting devices at the time of the invention of the '509 Patent.

**ANSWER 69:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 69 of the Complaint and therefore denies them. To the extent the allegations of Paragraph 69 characterize, summarize, or otherwise purport to describe the contents of the '509 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 69 of the Complaint.

70. For instance, the '509 Patent discloses that, "In a commonly-known process of making a light-emitting structure, a chip of a light-emitting element such as a light-emitting diode (LED) is made by dicing a finished epitaxial structure formed by an epitaxial growth process," and "[t]he chip is then arranged on a submount, which is a lead frame or a big size mounting substrate, for the following wire-bonding, soldering, phosphor-coating, and encapsulation processes." '509 Patent at 1:29-36. However, the '509 Patent discloses that "there are too many steps in these processes," and thus "the time and the cost of the manufacture are dramatically increased." *Id.*, at 1:36-38.

**ANSWER 70:** HP admits that Paragraph 70 purports to quote from the '509 Patent. HP admits only that the '509 Patent exists and that it is a written document. The '509 Patent speaks for itself. To the extent the allegations of Paragraph 70 characterize, summarize, or otherwise purport to describe the contents of the '509 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 70 of the Complaint.

71. To address this problem and/or other problems (e.g., "[t]o improve a light

extraction efficiency of the light-emitting element," the '509 Patent discloses "a light-emitting structure which includes a semiconductor light-emitting element, a first connection point and a reflective element," where "[t]he semiconductor light-emitting element includes a bottom surface, a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface, "[t]he first connection point is arranged on the bottom surface, and "[t]he reflective element includes a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path."

*Id.*, at 1:42-54.

**ANSWER 71:** HP admits that Paragraph 71 purports to quote from the '509 Patent and that the '509 Patent speaks for itself. To the extent the allegations of Paragraph 71 characterize, summarize, or otherwise purport to describe the contents of the '509 Patent, HP denies those allegations. Except as explicitly admitted, HP denies the allegations in Paragraph 71 of the Complaint.

**COUNT I: INFRINGEMENT OF U.S. PATENT No. 8,492,780**

72. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 72:** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

73. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '780 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the

United States without authority or license products, including but not limited to the HP Omen 32Q Monitor, E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'780 Accused Products").

**ANSWER 73:** Denied.

74. As one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '780 Patent in connection with one of the '780 Accused Products (e.g., the HP Omen 32Q Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '780 Accused Products that it obtains during discovery.

**ANSWER 74:** Denied.

75. ***1(a): A light emitting device, comprising: a substrate, wherein the substrate comprises a first major surface, a second major surface, and a sidewall; and*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '780 Accused Products that are covered by claim 1 of the '780 Patent. For instance, the HP Omen 32Q Monitor is a light emitting device comprising a substrate, wherein the substrate comprises a first major surface, a second major surface and a sidewall, as shown in Figure 1A-1 to Figure 1A-2 below:




*Figure 1A – 1*




*Figure 1A – 2*

**ANSWER 75:** Denied.

76. ***1(b): a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer;***— The HP Omen 32Q Monitor comprises a light emitting stack layer formed on the first major surface of the substrate comprising a first conductive-type

semiconductor layer, an active layer and a second conductive-type semiconductor layer, as shown in Figure 1A – 3 to Figure 1A – 4 below:




*Figure 1A - 3*



*Figure 1A – 4*

**ANSWER 76:** Denied.

77. ***1(c): wherein the sidewall of the substrate comprises a first area and a second area;***— In the HP Omen 32Q Monitor, the sidewall of the substrate comprises a first area and a second area, as shown in Figure 1A – 5 to Figure 1A – 6 below:




*Figure 1A – 5*



Figure 1A– 6

**ANSWER 77:** Denied.

78. ***1(d): wherein the morphology of the first area is substantially flat and the morphology of the second area is substantially textured.***— In the HP Omen 32Q Monitor, the

morphology of the first area is a substantially flat, and the morphology of the second area is substantially textured, as shown in Figure 1A– 5 to Figure 1A– 6 above.

**<u>ANSWER 78:</u>** Denied.

79. Additionally, Defendant has been and/or currently is an active inducer of infringement of the ’780 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the ’780 Patent under 35 U.S.C. § 271(c).

**<u>ANSWER 79:</u>** Denied.

80. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ’780 Patent while being on notice of (or willfully blind to) the ’780 Patent. For instance, Defendant has supplied and continues to supply the ’780 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the ’780 Patent.

**<u>ANSWER 80:</u>** Denied.

81. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ’780 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the ’780 Accused Products and uses of the ’780 Accused Products.

**<u>ANSWER 81:</u>** Denied.

82. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the ’780 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’780 Patent or at least should have known of the existence of the ’780 Patent but were willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’780 Patent since at least as early as the filing and/or service of the

Complaint. And, as a result of its knowledge of the ’780 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or have intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’780 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’780 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’780 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 82:** Denied.

83. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’780 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’780 Accused Products that contribute to the direct infringement of the ’780 Patent by customers of the ’780 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’780 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’780 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’780 Patent. Defendant has supplied (and/or continues to supply) the ’780 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’780 Patent by using the ’780 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 83:** Denied.

84. At least as early as the filing and/or service of the Complaint, Defendant's infringement of the '780 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

**ANSWER 84:** Denied.

85. Additional allegations regarding Defendant's knowledge of the '780 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 85:** Denied.

86. Defendant's infringement of the '780 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 86:** Denied.

87. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35U.S.C. § 287 with respect to the '780 Patent.

**ANSWER 87:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 87 of the Complaint and therefore denies them.

88. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '780 Patent, including, without limitation, a reasonable royalty.

**ANSWER 88:** Denied.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,552,460

89. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 89:** Defendant incorporates by reference and restates the foregoing paragraphs of

its Answer to the Complaint as if fully set forth herein.

90. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the ’2,460 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Series 5 Pro 514pn, among other substantially similar products (collectively, the “’2,460 Accused Products”).

**ANSWER 90:** Denied.

91. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ’2,460 Patent in connection with one of the ’2,460 Accused Products (e.g., the HP Series 5 Pro 514pn). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’2,460 Accused Products that it obtains during discovery.

**ANSWER 91:** Denied.

92. ***1(a): A high-brightness LED module comprising: a silicon substrate comprising a recess defined by sidewalls and a membrane, wherein at least two micro-vias are disposed in the membrane, the micro-vias comprising conductive material that passes through the membrane; and*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the ’2,460 Accused Products that are covered by claim 1 of the ’2,460 Patent. For instance, the HP Series 5 Pro 514pn is a high brightness LED module comprising a silicon substrate comprising a recess defined by sidewalls and a membrane, wherein at least two micro-vias are disposed in the membrane, the micro-vias

comprising conductive material that passes though the membrane, as shown in Figure 1B - 1 and Figure 1B – 6 below:




*Figure 1B - 1*




*Figure 1B – 2*




*Figure 1B - 3*




*Figure 1B – 4 (First micro-via p-contact)*




*Figure 1B – 5 (Second micro-via n-contact)*




*Figure 1B – 6 (The micro-vias comprise conductive material such as Gold, Tin, and Copper that pass though the membrane.)*

**ANSWER 92:** Denied.

93. ***1(b): a light emitting element mounted to the membrane, wherein a p-contact of the light emitting element is coupled to a first micro-via and an n-contact of the light emitting element is coupled to a second micro-via.*** — The HP Series 5 Pro 514pn includes a light emitting element mounted to the membrane, wherein a p-contact of the light emitting element is coupled to a first micro-via and an n-contact of the light emitting element is coupled to a second micro-via, as shown in Figure 1B – 7 to Figure 1B – 10 below:




*Figure 1B - 7*




*Figure 1B - 8 (p-contact is coupled to the first micro-via)*




*Figure 1B - 9 (n-contact is coupled to the second micro-via)*




*Figure 1B – 10*

**ANSWER 93:** Denied.

94. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '2,460 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '2,460 Patent under 35 U.S.C. § 271(c).

**ANSWER 94:** Denied.

95. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '2,460 Patent while being on notice of (or willfully blind to) the '2,460 Patent. For instance, Defendant has supplied and continues to supply the '2,460 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '2,460 Patent.

**ANSWER 95:** Denied.

96. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '2,460 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '2,460 Accused Products and uses of the '2,460 Accused Products.

**ANSWER 96:** Denied.

97. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the ’2,460 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’2,460 Patent or at least should have known of the existence of the ’2,460 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’2,460 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ’2,460 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’2,460 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’2,460 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’2,460 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 97:** Denied.

98. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’2,460 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’2,460 Accused Products that contribute to the direct infringement of the ’2,460 Patent by customers of the ’2,460 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’2,460 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’2,460 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and

Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’2,460 Patent. Defendant has supplied (and/or continues to supply) the ’2,460 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’2,460 Patent by using the ’2,460 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 98:** Denied.

99. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’2,460 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

**ANSWER 99:** Denied.

100. Additional allegations regarding Defendant’s knowledge of the ’2,460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 100:** Denied.

101. Defendant’s infringement of the ’2,460 Patent is exceptional and entitles Plaintiff to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 101:** Denied.

102. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ’2,460 Patent.

**ANSWER 102:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 102 of the Complaint and therefore denies them.

103. Plaintiff is entitled to recover from Defendant all damages that TCV has sustained as a result of Defendant’s infringement of the ’2,460 Patent, including, without limitation, a

reasonable royalty.

**ANSWER 103:** Denied.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,766,309**

104. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 104:** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

105. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '309 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Omen 32Q Monitor, among other substantially similar products (collectively, the "'309 Accused Products").

**ANSWER 105:** Denied.

106. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '309 Patent in connection with one of the '309 Accused Products (e.g., the HP E14 G4 Portable Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '309 Accused Products that it obtains during discovery.

**ANSWER 106:** Denied.

107. ***1(a): A device comprising: a substrate;*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the

United States, the ’309 Accused Products that are covered by claim 1 of the ’309 Patent.

For instance, the HP E14 G4 Portable Monitor is a device comprising a substrate, as shown in Figure 1E - 1:



*Figure 1C - 1*

**<u>ANSWER 107:</u>** Denied.

108. ***1(b)*: *a light-reflective layer disposed over the substrate;*** — The HP E14 G4 Portable Monitor comprises a light-reflective layer disposed over the substrate, as shown in Figure 1C – 2 to Figure 1C – 4 below.



*Figure 1C - 2*




*Figure 1C – 3*

| Quant. Type | Element | Line | keV | Mass% | Atom% | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 37.29±0.09 | 56.84±0.14 | 17.84 | Std-less | 0.97/4.46/1.00 |
| Automatically identified | O | K | 0.525 | 25.32±0.11 | 28.98±0.12 | 23.90 | Std-less | 0.93/2.36/1.00 |
| Automatically identified | Al | K | 1.486 | 7.35±0.04 | 4.99±0.03 | 10.52 | Std-less | 0.96/1.52/1.00 |
| Automatically identified | Si | K | 1.739 | 5.23±0.04 | 3.41±0.02 | 8.14 | Std-less | 0.94/1.42/1.00 |
| Manually identified | Ti | K | 4.508 | 0.99±0.03 | 0.38±0.01 | 1.76 | Std-less | 1.12/1.04/1.00 |
| Automatically identified | Cu | K | 8.040 | 8.42±0.12 | 2.43±0.04 | 14.41 | Std-less | 1.21/1.00/1.00 |
| Automatically identified | Nb | L | 2.166 | 13.40±0.08 | 2.64±0.02 | 20.41 | Std-less | 1.27/1.07/1.00 |
| Automatically identified | Ag | L | 2.984 | 2.00±0.04 | 0.34±0.01 | 3.03 | Std-less | 1.31/1.04/1.00 |
| Total | | | | 100.00 | 100.00 | | | |
| Spc_002 | | | | | | | | Fitting ratio 0.0128 |

*Figure 1C - 4*

**ANSWER 108:** Denied.

109. ***1(c): a photonic crystal layer disposed over the substrate, the photonic crystal layer being configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate; and*** — The HP E14 G4 Portable Monitor comprises a photonic crystal layer disposed over the substrate, where the photonic crystal layer is configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate. *See, e.g.,* Figure 1C – 5 to Figure 1C – 7 below:




*Figure 1C - 5*




*Figure 1C – 6*




*Figure 1C - 7*

***1 (d): a light-emitting diode (LED) disposed over the substrate, wherein the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and wherein the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED.*** — The HP E14 G4 Portable Monitor comprises an LED disposed over the substrate, where the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and where the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED. *See, e.g.,* Figure 1C – 8 to Figure 1C – 10 below:



*Figure 1C – 8*




*Figure 1C - 9*




*Figure 1C -10*

**<u>ANSWER 109:</u>** Denied.

110. Additionally, Defendant has been and/or currently is an active inducer of infringement of the ’309 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the ’309 Patent under 35 U.S.C. § 271(c).

**ANSWER 110:** Denied.

111. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ’309 Patent while being on notice of (or willfully blind to) the ’309 Patent. For instance, Defendant has supplied and continues to supply the ’309 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the ’309 Patent.

**ANSWER 111:** Denied.

112. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ’309 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the ’309 Accused Products and uses of the ’309 Accused Products.

**ANSWER 112:** Denied.

113. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the ’309 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’309 Patent or at least should have known of the existence of the ’309 Patent but were willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’309 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ’309 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the

’309 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’309 Patent and/or subjectively believe (and/or has believed) that its actions will (and/or would) result in infringement of the ’309 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 113:** Denied.

114. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’309 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’309 Accused Products that contribute to the direct infringement of the ’309 Patent by customers of the ’309 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’309 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’309 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’309 Patent. Defendant has supplied (and/or continues to supply) the ’309 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’309 Patent by using the ’309 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 114:** Denied.

115. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’309 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

**<u>ANSWER 115:</u>** Denied.

116. Additional allegations regarding Defendant's knowledge of the '309 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**<u>ANSWER 116:</u>** Denied.

117. Defendant's infringement of the '309 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**<u>ANSWER 117:</u>** Denied.

118. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '309 Patent.

**<u>ANSWER 118:</u>** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 118 of the Complaint and therefore denies them.

119. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '309 Patent, including, without limitation, a reasonable royalty.

**<u>ANSWER 119:</u>** Denied.

**<u>COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,257,604</u>**

120. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**<u>ANSWER 120:</u>** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

121. Defendant has infringed and is infringing, either literally or under the doctrine

of equivalents, the ’604 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Omen 32Q Monitor, HP E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Series 5 Pro 514pn, among other substantially similar products (collectively, the “’604 Accused Products”).

**ANSWER 121:** Denied.

122. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ’604 Patent in connection with one of the ’604 Accused Products (e.g., the HP Omen 32Q Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’604 Accused Products that it obtains during discovery.

**ANSWER 122:** Denied.

123. ***1(a): A light-emitting device comprising: a substrate having a top surface and a first patterned unit bulged on the top surface; and*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the ’604 Accused Products that are covered by claim 1 of the ’604 Patent.

For instance, the HP Omen 32Q Monitor is a light-emitting device comprising a substrate having a top surface and a first patterned unit bulged on the top surface, as shown in Figure 1D – 1 below:




*Figure 1D – 1*

**<u>ANSWER 123:</u>** Denied.

124. ***1(b)*: *a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface;*** — The HP Omen 32Q Monitor comprises a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface, as shown in Figure 1D – 2 to Figure 1D – 3 below.




*Figure 1D – 2*




*Figure 1D – 3*

**<u>ANSWER 124:</u>** Denied.

125. ***1(c): wherein a base of the first patterned unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex.*** — In the HP Omen 32Q Monitor, a base of the first pattered unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex. *See, e.g.,* Figure 1D – 4 to Figure 1D – 5 below:




*Figure 1D - 4*




*Figure 1D – 5*

**ANSWER 125:** Denied.

126. Additionally, Defendant has been and/or currently is an active inducer of infringement of the ’604 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the ’604 Patent under 35 U.S.C. § 271(c).

**ANSWER 126:** Denied.

127. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ’604 Patent while being on notice of (or willfully blind to) the ’604 Patent. For instance, Defendant has supplied and continues to supply the ’604 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the ’604 Patent.

**ANSWER 127:** Denied.

128. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ’604 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the ’604 Accused Products and uses of the ’604 Accused Products.

**ANSWER 128:** Denied.

129. Defendant knows (and/or has known) that such encouraging and aiding does

(and/or would) result in its customers directly infringing the ’604 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’604 Patent or at least should have known of the existence of the ’604 Patent but were willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’604 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ’604 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’604 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’604 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’604 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 129:** Denied.

130. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’604 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’604 Accused Products that contribute to the direct infringement of the ’604 Patent by customers of the ’604 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’604 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’604 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’604 Patent. Defendant has supplied (and/or continues to

supply) the ’604 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’604 Patent by using the ’604 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 130:** Denied.

131. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’604 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

**ANSWER 131:** Denied.

132. Additional allegations regarding Defendant’s knowledge of the ’604 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 132:** Denied.

133. Defendant’s infringement of the ’604 Patent is exceptional and entitles Plaintiff to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 133:** Denied.

134. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ’604 Patent.

**ANSWER 134:** HP lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 134 of the Complaint and therefore denies them.

135. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant’s infringement of the ’604 Patent, including, without limitation, a reasonable royalty.

**ANSWER 135:** Denied.

**COUNT V: INFRINGEMENT OF U.S. PATENT No. 9,847,460**

136. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 136:** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

137. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '7,460 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Series 5 524SW, among other substantially similar products (collectively, the "'7,460 Accused Products").

**ANSWER 137:** Denied.

138. By way of non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '7,460 Patent in connection with one of the '7,460 Accused Products (e.g., the HP Series 5 524SW). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '7,460 Accused Products that it obtains during discovery.

**ANSWER 138:** Denied.

139. ***1(a): A light emitting device, comprising: a semiconductor light emitting stack;***— Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '7,460 Accused Products that are covered by claim 1 of the '7,460 Patent. For instance, the HP Series 5 524SW is a light emitting device comprising a semiconductor light emitting stack, as shown in Figure 1E-1 below:




*Figure 1E – 1*

**ANSWER 139:** Denied.

140. ***1(b): an electrode on the semiconductor light emitting stack, the electrode comprising:*** — The HP Series 5 524SW includes an electrode on the semiconductor light emitting stack, as shown in Figure 1E – 2 below:




*Figure 1E - 2*

**ANSWER 140:** Denied.

141. ***1(c): a mirror layer; and adhesion layer inserted between the mirror layer and the semiconductor light emitting stack; and a bonding layer on the mirror layer; and*** — The HP

Series 5 524SW includes a mirror layer, an adhesion layer between the mirror layer and the semiconductor light emitting stack, and a bonding layer on the mirror layer, as shown in Figure 1E–3 below:




*Figure 1E - 3*

**<u>ANSWER 141:</u>** Denied.

142. ***1(d): a plurality of pits between the bonding layer and then semiconductor light emitting stack;*** — The HP Series 5 524SW includes a plurality of pits between the bonding layer and the semiconductor light emitting stack, as shown in Figure 1E – 4 below:



*Figure 1E - 4*

**<u>ANSWER 142:</u>** Denied.

143. ***1(e): wherein one of the plurality of pits is not filled up by the adhesion layer.*** — In the HP Series 5 524SW, one of the plurality of pits is not filled up by the adhesion layer, as shown in Figure 1E – 5 below:



*Figure 1E - 5*

**ANSWER 143:** Denied.

144. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '7,460 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '7,460 Patent under 35 U.S.C. § 271(c).

**ANSWER 144:** Denied.

145. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '7,460 Patent while being on notice of (or willfully blind to) the '7,460 Patent. For instance, Defendant has supplied and continues to supply the '7,460 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '7,460 Patent.t

**ANSWER 145:** Denied.

146. Defendant has been and/or currently is knowingly and intentionally encouraging

and aiding customers to engage in such direct infringement of the ’7,460 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the ’7,460 Accused Products and uses of the ’7,460 Accused Products.

**ANSWER 146:** Denied.

147. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the ’7,460 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’7,460 Patent or at least should have known of the existence of the ’7,460 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’7,460 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ’7,460 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’7,460 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’7,460 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’7,460 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 147:** Denied.

148. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’7,460 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’7,460 Accused Products that contribute to the direct infringement of the ’7,460 Patent by customers of the ’7,460 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’7,460 Patent or was willfully blind to

its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’7,460 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’7,460 Patent. Defendant has supplied (and/or continues to supply) the ’7,460 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’7,460 Patent by using the ’7,460 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 148:** Denied.

149. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’7,460 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

**ANSWER 149:** Denied.

150. Additional allegations regarding Defendant’s knowledge of the ’7,460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 150:** Denied.

151. Defendant’s infringement of the ’7,460 Patent is exceptional and entitles Plaintiff to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 151:** Denied.

152. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ’7,460 Patent.

**ANSWER 152:** HP lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 151 of the Complaint and therefore denies them.

153. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '7,460 Patent, including, without limitation, a reasonable royalty.

**ANSWER 153:** Denied.

**COUNT VI: INFRINGEMENT OF U.S. PATENT No. 10,038,116**

154. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 154:** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

155. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '116 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Omen 32Q Monitor, E14 G4 Portable Monitor, HP Omnibook 5 Flip, HP Series 5 524SW, and HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'116 Accused Products").

**ANSWER 155:** Denied.

156. As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '116 Patent in connection with one of the '116 Accused Products (e.g., the HP Omen 32Q Monitor). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '116 Accused Products that it obtains during discovery.

**<u>ANSWER 156:</u>** Denied.

157. ***1(a): A light emitting device, comprising: a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire; and*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the '116 Accused Products that are covered by claim 1 of the '116 Patent.

For instance, the HP Omen 32Q Monitor is a light emitting device comprising a textured substrate including a plurality of textured structures, where the plurality of textured structures and the textured substrate are both composed of sapphire. *See, e.g.,* Figure 1F-1 to Figure 1F-3 below:




*Figure 1F – 1*




*Figure 1F – 2*




*Figure 1F - 3*

**ANSWER 157:** Denied.

158. ***1(b): a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer,*** — The HP Omen 32Q Monitor includes a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer, as shown in Figure 1F – 4 and Figure 1F – 5 below:




*Figure 1F – 4*




*Figure 1F – 5*

**<u>ANSWER 158:</u>** Denied.

159. ***1(c): wherein one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side.*** — The HP Omen 32Q Monitor includes one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side as seen in Figure 1F – 7 to Figure 1F - 10:




*Figure 1F – 7*




*Figure 1F - 8*




*Figure 1F - 9*




*Figure 1F - 10*

**ANSWER 159:** Denied.

160. Additionally, Defendant has been and/or currently is an active inducer of infringement of the ’116 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the ’116 Patent under 35 U.S.C. § 271(c).

**ANSWER 160:** Denied.

161. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ’116 Patent while being on notice of (or willfully blind to) the ’116 Patent. For instance, Defendant has supplied and continues to supply the ’116 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the ’116 Patent.

**ANSWER 161:** Denied.

162. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ’116 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the ’116 Accused Products and uses of the ’116 Accused Products.

**ANSWER 162:** Denied.

163. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the ’116 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’116 Patent or at least should have known of the existence of the ’116 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’116 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ’116 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’116 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’116 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’116 Patent but have taken (and/or took) deliberate

actions to avoid learning of those facts.

**ANSWER 163:** Denied.

164. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’116 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’116 Accused Products that contribute to the direct infringement of the ’116 Patent by customers of the ’116 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’116 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’116 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’116 Patent. Defendant has supplied (and/or continues to supply) the ’116 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’116 Patent by using the ’116 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 164:** Denied.

165. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’116 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

**ANSWER 165:** Denied.

166. Additional allegations regarding Defendant’s knowledge of the ’116 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 166:** Denied.

167. Defendant's infringement of the '116 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 167:** Denied.

168. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '116 Patent.

**ANSWER 168:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and therefore denies them.

169. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '116 Patent, including, without limitation, a reasonable royalty.

**ANSWER 169:** Denied.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 10,439,108**

170. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 170:** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

171. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '108 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Transcend Laptop, among other substantially similar products (collectively, the "'108 Accused Products").

**ANSWER 171:** Denied.

172. As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ’108 Patent in connection with one of the ’108 Accused Products (e.g. the HP Transcend Laptop). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’108 Accused Products that it obtains during discovery.

**ANSWER 172:** Denied.

173. ***1(a): An LED light emitting device, comprising a quantum dot film, a dichroic layer, and a blue LED emitter, wherein:*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the ’108 Accused Products that are covered by claim 1 of the ’108 Patent.

For instance, the HP Transcend Laptop is a LED light emitting device comprising a quantum dot film, a dichroic layer, and a blue LED emitter, as shown in Figure 1H-1 to Figure 1H-2 below:



*Figure 1H – 1*




*Figure 1H - 2*

**<u>ANSWER 173:</u>** Denied.

174. ***1(b): the blue LED emitter is configured to emit a blue light toward the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength;*** — In the HP Transcend Laptop, the blue LED emitter is configured to emit a blue light towards the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength, as shown in Figure 1H – 3 to Figure 1H – 6 below:



*Figure 1H – 3*




*Figure 1H*




-

*Figure 1H - 5*




*Figure 1H – 6 (EDS Measurement of the quantum dot material)*

**<u>ANSWER 174:</u>** Denied.

175. ***1(c): the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer; and*** — In the HP Transcend Laptop, the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer, as shown in Figure 1H – 7 below:



*Figure 1H - 7*

**<u>ANSWER 175:</u>** Denied.

176. ***1(d): the dichroic layer is configured to: substantially reflect a first spectral portion of the blue light emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, wherein the first spectral portion is determined by a preset spectral band;***— In the HP Transcend Laptop, the dichroic layer is configured to substantially reflect a first spectral portion of the blue light, emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, where the first spectral portion is determined by a preset band (e.g., 400nm-435nm and/or 470nm-485nm), as shown in Figure 1H – 8 and Figure 1H – 9 below:

QD Film Light Emission:




*Figure 1H – 8*

Dichroic Layer Light Emission:




*Figure 1H – 9*

**<u>ANSWER 176:</u>** Denied.

177. ***1(e): substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer; and***— In the HP Transcend Laptop, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer (e.g., 430nm-470nm), as shown in Figure 1H – 10 and Figure 1H – 11 below:

QD Film Light Emission:




*Figure 1H – 10*

Dichroic Layer Light Emission:




*Figure 1H – 11*

**<u>ANSWER 177:</u>** Denied.

178. ***1(f): substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer.***— In the HP Transcend Laptop, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer (e.g., red and green light), as shown in Figure 1H – 12 and Figure 1H – 13 below:

QD Film Light Emission:




*Figure 1H - 12*

Dichroic Layer Light Emission:




*Figure 1H – 13*

**<u>ANSWER 178:</u>** Denied.

179. Additionally, Defendant has been and/or currently is an active inducer of infringement of the ’108 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the ’108 Patent under 35 U.S.C. § 271(c).

**<u>ANSWER 179:</u>** Denied.

180. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ’108 Patent while being on notice of (or willfully blind to) the ’108 Patent. For instance, Defendant has supplied and

continues to supply the ’108 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the ’108 Patent.

**ANSWER 180:** Denied.

181. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ’108 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the ’108 Accused Products and uses of the ’108 Accused Products.

**ANSWER 181:** Denied.

182. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the ’108 Patent. For instance, Defendant knows (and/or has known) of the existence of the ’108 Patent or at least should have known of the existence of the ’108 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the ’108 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ’108 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’108 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’108 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’108 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 182:** Denied.

183. Additionally, Defendant has been and/or currently is contributorily infringing one

or more claims of the ’108 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’108 Accused Products that contribute to the direct infringement of the ’108 Patent by customers of the ’108 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’108 Patent or was willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’108 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’108 Patent. Defendant has supplied (and/or continues to supply) the ’108 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’108 Patent by using the ’108 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 183:** Denied.

184. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’108 Patent was and continues to be willful and deliberate, thereby entitling TCV to enhanced damages.

**ANSWER 184:** Denied.

185. Additional allegations regarding Defendant’s knowledge of the ’108 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 185:** Denied.

186. Defendant’s infringement of the ’108 Patent is exceptional and entitles Plaintiff to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 186:** Denied.

187. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '108 Patent.

**ANSWER 187:**

188. Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '108 Patent, including, without limitation, a reasonable royalty.

**ANSWER 188:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188 of the Complaint and therefore denies them.

**COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,566,509**

189. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

**ANSWER 189:** HP incorporates by reference and restates the foregoing paragraphs of its Answer to the Complaint as if fully set forth herein.

190. Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '509 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the HP Series 5 Pro 514pn, among other substantially similar products (collectively, the "'509 Accused Products").

**ANSWER 190:** Denied.

191. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '509 Patent in connection with one of the '509 Accused Products (e.g., the HP Series 5 Pro 514pn). This description is based

on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’509 Accused Products that it obtains during discovery.

**ANSWER 191:** Denied.

192. ***1(a): A light-emitting structure, comprising: a semiconductor light-emitting element comprising a bottom surface a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface;*** — Defendant, directly and/or indirectly, makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States, the ’509 Accused Products that are covered by claim 1 of the ’509 Patent.

For instance, the HP Series 5 Pro 514pn is a light-emitting structure, comprising a semiconductor light-emitting element comprising a bottom surface a top surface opposite to the bottom surface, and a side surface arranged between the bottom surface and the top surface, as shown in Figure 1I - 1 below:




*Figure 1I - 1*

**ANSWER 192:** Denied.

193. ***1(b): a first connection point arranged under the bottom surface; and*** — The HP Series 5 Pro 514pn comprises a first connection point arranged under the bottom surface, as

shown in Figure 1I – 2:




*Figure 1I - 2*

**ANSWER 193:** Denied.

194. ***1(c): a reflective element, comprising an inner sidewall having a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path,*** — The HP Series 5 Pro 514pn comprises a reflective element, comprising an inner sidewall having a first portion arranged right beneath the bottom surface, and a second portion not overlapping the bottom surface and uplifted from a lower elevation lower than the bottom surface to a higher elevation substantially equal to that of the top surface along a curved path, as shown in Figure 1I – 3 to Figure 1I – 5 below:


Inner Sidewall's Second Portion
Bottom Surface
Reflective Element
Inner Sidewall's First Portion

*Figure 1I - 3*


Top Surface
Second Portion

*Figure 1I - 4*



*Figure 1I – 5*

**<u>ANSWER 194:</u>** Denied.

195. ***1(d): wherein the curved path has a first slope variation from a first smaller value to a first greater value, and a second slope variation from a second greater value to a second smaller value.*** — The HP Series 5 Pro 514pn comprises a reflective element, wherein the curved path has a first slope variation from a first smaller value to a first greater value, and a second slope variation from a second greater value to a second smaller value., as shown in Figure 1I – 6 below:




*Figure 1I – 6*

**ANSWER 195:** Denied.

196. Additionally, Defendant has been and/or currently is an active inducer of infringement of the '509 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '509 Patent under 35 U.S.C. § 271(c).

**ANSWER 196:** Denied.

197. Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '509 Patent while being on notice of (or willfully blind to) the '509 Patent. For instance, Defendant has supplied and continues to supply the '509 Accused Products to customers while knowing that use of these products in their intended manner will directly infringe one or more claims of the '509 Patent.

**ANSWER 197:** Denied.

198. Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '509 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '509 Accused Products and uses of the '509 Accused Products.

**ANSWER 198:** Denied.

199. Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '509 Patent. For instance, Defendant knows (and/or has known) of the existence of the '509 Patent or at least should have known of the existence of the '509 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '509 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '509 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has

intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ’509 Patent by Defendant’s customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the ’509 Patent and/or subjectively believe (and/or have believed) that its actions will (and/or would) result in infringement of the ’509 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

**ANSWER 199:** Denied.

200. Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the ’509 Patent by offering for sale, selling, and/or importing one or more components in connection with the ’509 Accused Products that contribute to the direct infringement of the ’509 Patent by customers of the ’509 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the ’509 Patent or were willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the ’509 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) were especially made or especially adapted for use in infringement of the ’509 Patent. Defendant has supplied (and/or continues to supply) the ’509 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ’509 Patent by using the ’509 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

**ANSWER 200:** Denied.

201. At least as early as the filing and/or service of the Complaint, Defendant’s infringement of the ’509 Patent was and continues to be willful and deliberate, thereby entitling

Plaintiff to enhanced damages.

**ANSWER 201:** Denied.

202. Additional allegations regarding Defendant's knowledge of the '509 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

**ANSWER 202:** Denied.

203. Defendant's infringement of the '509 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER 203:** Denied.

204. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '509 Patent.

**ANSWER 204:** HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204 of the Complaint and therefore denies them.

205. Plaintiff is entitled to recover from Defendant all damages that TCV has sustained as a result of Defendant's infringement of the '509 Patent, including, without limitation, a reasonable royalty.

**ANSWER 205:** Denied.

## PRAYER FOR RELIEF

HP denies that Plaintiff is entitled to any of the relief it requested.

## DEMAND FOR JURY TRIAL

A response is not required to Plaintiff's demand for a jury trial. HP also demands a trial by jury for all issues so triable pursuant to Rule 38 of the Federal Rules of Civil procedure.

## DEFENSES

Subject to its responses above, and upon information and belief, HP alleges and asserts the following defenses in response to the allegations of the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the defenses described below, HP specifically reserves all rights to allege additional defenses pursuant to any scheduling order, that become known through the course of discovery, or otherwise.

## FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

1. Plaintiff fails to state any claim for direct or indirect infringement against HP upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE: NON-INFRINGEMENT

2. HP has not infringed and is not infringing, literally or under the doctrine of equivalents, and either directly or indirectly, contributorily, or by inducement, any valid and enforceable claim of the United States Patent Nos. 8,492,780; 8,552,460; 8,766,309; 9,257,604; 9,847,460; 10,038,116; 10,439,108; and 10,566,509 (collectively, the "Patents-in-Suit").

## THIRD AFFIRMATIVE DEFENSE: INVALIDITY

3. One or more claims of the Patents-in-Suit are invalid for failure to satisfy one or more of the requirements for patentability under the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112, the applicable provisions of title 37 of the Code of Federal Regulations, and judicially created bases for invalidation.

**FOURTH AFFIRMATIVE DEFENSE: LACK OF STANDING**

4. To the extent Plaintiff was not the true, correct, sole and total owner of all substantial rights in the Patents-in-Suit as of the filing date of the Complaint, Plaintiff lacks standing to bring or maintain or more claims in this lawsuit.

**FIFTH AFFIRMATIVE DEFENSE: PROSECUTION HISTORY ESTOPPEL AND DISCLAIMER**

5. Plaintiff's claims are barred, in whole or in part, by the doctrines of prosecution history estoppel, judicial estoppel, and/or prosecution disclaimer based on amendments, statements, representations, and admissions made during prosecution of the applications that led to the Patents-in-Suit and related patents or during any post-issuance proceedings from asserting any interpretation of the claims of the Patents-in-Suit and related patents.

**SIXTH AFFIRMATIVE DEFENSE: EQUITABLE BARS**

6. Plaintiff's claims are barred or limited by the equitable doctrines of estoppel, waiver, or other equitable doctrines.

**SEVENTH AFFIRMATIVE DEFENSE: LIMITATION ON DAMAGES**

7. Plaintiff's claims for relief are barred, in whole or in part, by operation of the applicable statutes that limit damages, costs, and other relief, including but not limited to 35 U.S.C. §§ 286, 287, and 288.

**EIGHTH AFFIRMATIVE DEFENSE: NO EXCEPTIONAL CASE**

8. HP has engaged in all relevant activities in good faith, thereby precluding Plaintiff, even if it prevails, from recovering its reasonable fees and/or costs under 35 U.S.C. § 285 or enhanced damages under 35 U.S.C. § 284.

**NINTH AFFIRMATIVE DEFENSE: NO INJUNCTION**

9. Plaintiff is not entitled to an injunction or to any equitable relief because any alleged injury to Plaintiff is neither immediate nor irreparable, Plaintiff has an adequate remedy at law, and granting equitable relief would not be in the public interest.

**TENTH AFFIRMATIVE DEFENSE: EXPRESS OR IMPLIED LICENSE AND/OR PATENT EXHAUSTION**

10. Plaintiff's claims are barred in whole or in part by express or implied license and/or patent exhaustion.

**ELEVENTH AFFIRMATIVE DEFENSE: ENSNAREMENT**

11. On information and belief, Plaintiff's infringement claims are barred by the doctrine of ensnarement. Plaintiff is foreclosed from asserting infringement under the doctrine of equivalents to the extent the scope of such equivalent would ensnare prior art.

**TWELFTH AFFIRMATIVE DEFENSE: FAILURE TO MARK**

12. On information and belief, Plaintiff's claim for damages is barred to the extent Plaintiff, Plaintiff's licensees, and/or prior owners of the Patents-in-Suit failed to mark their products in accordance with 35 U.S.C. § 287(a).

**THIRTEENTH AFFIRMATIVE DEFENSE: GOVERNMENT SALES**

13. Plaintiff's claims for infringement as they relate to any product manufactured by HP for use by the United States is limited to the rights and remedies set forth in 28 U.S.C. §1498. Plaintiff cannot seek damages against HP for any product made for and/or used by the United States government.

**FOURTEENTH AFFIRMATIVE DEFENSE: NO WILLFUL INFRINGEMENT**

14. Plaintiff is not entitled to enhanced or increased damages for willful infringement because HP has not engaged in any conduct that meets the applicable standard for willful infringement.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, HP respectfully requests a trial by jury on all claims and issues so triable.

Dated: July 6, 2026

Respectfully submitted,

/s/ *Zachary H. Ellis*

Vivian S. Kuo (*pro hac vice* filed)
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
Telephone: (202) 331-3158
Facsimile: (202) 331-3100
kuov@gtlaw.com

Elana B. Araj (*pro hac vice* to be filed)
Jonathan Presvelis (*pro hac vice* to be filed)
GREENBERG TRAURIG, LLP
One Vanderbilt Ave
New York, NY 10017
Telephone: (212) 801-6566
Facsimile: (212) 801-9200
elana.araj@gtlaw.com
presvelisj@gtlaw.com

Zachary H. Ellis
GREENBERG TRAURIG, LLP
2021 McKinney Ave
Suite 2000
Dallas, TX 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
zak.ellis@gtlaw.com

*Attorneys for Defendant HP Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on all counsel who have consented to electronic service via CM/ECF on July 6, 2026.

By: */s/ Zachary H. Ellis*
Zachary H. Ellis